OPINION OF THE COURT
Donald J. Mark, J.
This is an application by the defendant pursuant to CPL 330.30 (1) to vacate verdicts of guilty to the crimes of rape, first degree, and assault, second degree, upon the ground that *613 the court made two erroneous rulings during the course of the trial.
The defendant was charged with seven counts of rape, first degree, two counts of sodomy, first degree, and one count of assault, second degree, as a result of alleged sexual assaults committed upon the victim during an approximate six-hour period; two rapes and one sodomy allegedly occurred in the defendant’s vehicle, and five rapes, one sodomy and the assault allegedly happened in a municipal park. The incident concluded when four park employees rescued the woman and detained the defendant until police effected his arrest. The defendant claimed that the woman willingly participated in these sexual acts in exchange for cocaine, and that she complained of the rapes, sodomies and assault only when the defendant’s supply of that drug ran out.
This defense was the cause of the rulings of which the defendant complains, and each involved CPL 60.42 which pertains to the admissibility of a victim’s sexual conduct in sex offense cases.
The first ruling to which the defendant assigned error, which was not part of the motion to vacate but which nevertheless merits discussion, was the preclusion of a witness from testifying that the complainant had on prior occasions engaged in sex for cocaine.
A witness for the defense was prepared to testify that the victim frequented a house of prostitution and engaged in acts of sex in return for cocaine. The courts following the proscription of CPL 60.42 usually prohibit testimony of prior sexual liaisons of the victim with men other than the defendant (People v Bergeron, 125 AD2d 927; People v Clark, 118 AD2d 718). However, this testimony could be admissible in the interest of justice under subdivision (5) of that section, because it was directly corroborative of the defense in this case (see, People v Labenski, 134 AD2d 907; People v Smith, 113 AD2d 905, lv denied 66 NY2d 922). But this determination was complicated by the inability of the witness to identify the complainant from an array of 12 photos.
CPL 60.42 contemplates that a defendant may prove a victim’s sexual promiscuity by extrinsic evidence if it falls within one of the five exceptions (People v Hauver, 129 AD2d 889, lv denied 70 NY2d 712; People v Smith, supra). This was not permitted here because of the equivocal basis for the proffered testimony. Instead it was determined that the woman could be cross-examined as to the truth of this allega *614 tion, and the defendant would be bound by her response.[1] This was the procedure sanctioned in People v Tortorice (142 AD2d 916), where an unverified hospital record alluded to a prior act of sexual intercourse by the complainant, but a nurse testified that the complainant had denied ever engaging in sexual relations before the alleged rape.
Thus, the ruling that the evidence of the victim’s alleged prior conduct in engaging in sex for cocaine could only be elicited on her cross-examination was a proper one.
The second ruling claimed by the defendant to be erroneous, and which was the subject of this motion, was the limitation on the testimony of a witness who testified about alleged incidents of sexual solicitation by the victim which went beyond the court’s decision in that area.
The prosecutor disclosed to the defendant that one of the park employees to whom the victim ran for assistance after the sexual assault, who was a prosecution witness, possessed information which would be material to the defense. The witness could testify that approximately 10 months after the attack his truck was flagged down by the victim who asked him if he wanted to party because she needed $20 to purchase diapers for her baby. He could further testify that there were other instances when he had seen the woman attempting to solicit the drivers of automobiles for the purpose of prostitution. This latter proffered testimony was summarily excluded as it involves sexual contact with other than the defendant (People v Bergeron, supra; People v Clark, supra).
There were two concerns relative to the first portion of the offer which could be admitted under subdivision (5). First, the alleged event took place after the sexual attack. There is authority for the admission of testimony involving subsequent happenings (People v Crandall, 48 AD2d 946) so this issue was resolved in the defendant’s favor. The second was whether the court should exercise its discretion even if such testimony were admissible under a subdivision of CPL 60.42 (People v Westfall, 95 AD2d 581). This resolution also favored the defendant and this testimony was admitted in the interest of justice. It was felt that the unique circumstance of the complainant allegedly soliciting a prosecution witness who was *615 one of her rescuers justified the invocation of this exception (see, People v Laundry, 122 AD2d 450; People v Westfall, supra).
The witness, after his testimony as a prosecution witness was concluded, was called as a witness for the defense. The witness testified as anticipated, except that he denied any conversation concerning partying. The witness further testified, without objection, that on other occasions he had observed the victim flagging down automobiles for the obvious purpose of offering to engage in prostitution. At this point the court held a bench conference, indicated to both counsel that the ruling under subdivision (5) permitted testimony only as to the alleged solicitation of the witness, and directed that further exploration of this topic be discontinued. The defendant’s attorney accused the court of objecting on behalf of the prosecution, while the prosecutor indicated he was on the verge of objecting.
In People v Baez (103 AD2d 746), the prosecution elicited testimony without objection as to various forms of electronic and photographic surveillance used in narcotics investigations, that the undercover oificer did not wear a body wire because it could jeopardize his life and that one of the duties of the officer was to investigate international drug organizations. All of this testimony was irrelevant in that case because such surveillance was not used, the undercover officer’s life was not in jeopardy and the defendant was not involved in an international drug organization. The conviction of the defendant was reversed because although the defendant did not object to much of that testimony, "a Trial Judge should not stand mute when irrelevant and prejudicial testimony is offered which threatens a defendant’s right to a fair trial”.[2] (Supra, at 748.)
People v Tucker (140 AD2d 887, 891) is a case even more on point. In that case the defendant sought a reversal of his conviction because of the trial court’s "numerous sua sponte rulings limiting arguments and cross-examination by defense counsel and its repeated interruption of both direct and cross-examination of prosecution witnesses to ask questions” (emphasis added). The appellate court affirmed the conviction, holding that in virtually all instances the court’s "objections *616 were justified in curtailing repetitious interrogation or precluding the introduction of irrelevant matters into the trial.” (Supra, at 891.) That is exactly what this court did by precluding the direct examination of a defense witness in an area that had been previously ruled inadmissible.
The propriety of this ruling is reinforced by the fact that the procedure utilized in this case was a bench conference. The jury was unaware of the court’s intervention, and when the side-bar conference was concluded, the examination of the witness continued in a different direction. The court did not in any way convey to the jury that it was antagonistic to the defendant (People v Yut Wai Tom, 53 NY2d 44; People v De Jesus, 42 NY2d 519; People v Casanova, 124 AD2d 813), or that it had abandoned its neutral position (People v Jamison, 47 NY2d 882; People v De Jesus, supra).
Thus, the ruling curtailing the irrelevant and prejudicial examination of a defense witness in the absence of an objection by the prosecutor was proper.
The third alleged improper ruling, which was also part of the motion to vacate, resulted from the jury’s request that the testimony of the same witness concerning his alleged solicitation by the victim be read back.
After the court had precluded further testimony by the witness as to other alleged acts of solicitation that he had observed subsequent to the alleged rapes and sodomies, the prosecutor did not move to strike this testimony. During jury deliberations the jury requested a read-back of the witness’ testimony relative to this incident. The court directed the court reporter to read back the testimony concerning the one incident only and to refrain from reading back the testimony given in derogation of the court’s ruling. The defendant objected that since there had been no motion to strike, the inadmissible testimony should be read back to the jury. This objection was overruled, and the testimony as to the one event only was read back to the jury.
The law is crystal clear that a court must scrupulously honor a jury’s request that testimony be read back (People v Andino, 113 AD2d 944; People v Arcarola, 96 AD2d 1081). The "stricken” testimony in this case was in the nature of impeachment via prior bad acts (People v Duncan, 13 NY2d 37). While in analogous cases the appellate courts have held that it was reversible error for the trial courts to delete impeachment testimony from the cross-examination of witnesses when *617 there was a read-back (People v Flores, 115 AD2d 754; People v Sepulveda, 44 AD2d 846), as has been indicated, this was not impeachment testimony (People v Crandall, supra).
This is a situation where, although there was no request to strike, this court in essence did strike the objectionable testimony when the witness strayed beyond the allowable range. Where the direct examination of a witness has been struck because cross-examination has been frustrated for some reason (People v Chin, 67 NY2d 22; People v Baker, 39 NY2d 923, cert denied 429 US 868; People v Falchetti, 119 AD2d 690; People v Farruggia, 77 AD2d 447), a court could not comply with a request from the jury for a read-back of the direct testimony which had been stricken. The same result should apply here.
Thus, since as has been determined, the exclusion of this testimony was proper, so too the objected-to direction to the court reporter was proper.
Therefore, the application of the defendant to set aside the verdict of the jury because of the two allegedly erroneous rulings is denied.[3]

. While this mechanism has the appearance of impeachment by a specific act of misconduct (People v Duncan, 13 NY2d 37), this is rather the equivalent of direct evidence to contradict a victim’s claim of sexual assault (People v Crandall, 48 AD2d 946).

. La Rocca v Lane (37 NY2d 575, cert denied 424 US 968) should make this proposition equally applicable to the prosecution. There, the Court of Appeals stated: "Primary, of course, in a criminal action, is the right of both the defendant and the People to a fair and impartial trial” (at 582).

. It was unnecessary to determine if the alleged errors, even if sustained, could be addressed under the narrow standard of CPL 330.30 (1) (People v Carter, 63 NY2d 530), because the two rulings were found to be proper.