597 A.2d 956

Dwayne HARRIS a/k/a Eric Harris

v.

STATE of Maryland.

No. 5, Sept. Term, 1990.

Court of Appeals of Maryland.

Nov. 1, 1991.

George E. Burns, Jr., Asst. Public Defender, argued (Alan H. Murrell, Public Defender, Bradford C. Peabody, Asst. Public Defender, on brief), Baltimore, for petitioner.

Kreg Paul Greer, Asst. Atty. Gen., argued (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE and CHASANOW, JJ.

McAULIFFE, Judge.

Dwayne Harris was arrested on 21 November 1987, in Baltimore City, after the vehicle in which he was riding was stopped for speeding. The police found a plastic bag containing 13.3 grams (approximately one-half ounce) of cocaine in the defendant's shirt pocket and a loaded .25 caliber semi-automatic pistol in the right front pocket of one of the two pairs of pants the defendant was wearing. The defen-

dant was charged with various narcotics and handgun violations and was ultimately convicted by a jury of possession of cocaine with intent to distribute, Maryland Code, Art. 27, § 286(a)(1) (1957, 1987 Repl.Vol.), and unlawfully carrying a handgun, Art. 27, § 36B. He was sentenced to a total of 18 years confinement, during the first ten of which he is not eligible for parole.

The defendant appealed to the Court of Special Appeals, contending that the tangible evidence seized from him should have been suppressed and that the trial judge had erred in admitting, as substantive evidence in the State's case in chief, evidence of two prior convictions for possession of heroin with intent to distribute entered more than two years earlier. The Court of Special Appeals affirmed, *Harris v. State,* 81 Md.App. 247, 567 A.2d 476 (1989), and we granted the defendant's petition for certiorari to consider the admissibility of evidence of the two prior convictions.

## I.

Having been unsuccessful in his attempt to suppress the tangible evidence, defendant's attorney conceded in his opening statement to the jury that the State's evidence would show that the defendant possessed one-half ounce of cocaine and that the defendant was therefore guilty of the charge of simple possession. He informed the jury that the substantial question in the case would be whether the defendant intended to distribute the cocaine or merely possessed it for his own use.

The State presented evidence which would have supported, but which did not compel, a finding that the defendant possessed the cocaine with the intent to distribute it. The State showed that the cocaine was 70 percent pure; that traffickers usually dealt in cocaine having a high purity; that the cocaine had a street value in its present form of $900 to $1,000; and that the cocaine could be "cut" to a "street strength" of 20 percent and then sold in small quantities for a total of $4,500. The State also showed that

$800 in cash was seized from the driver, and an additional $190 was found in the vehicle.

Detective Robert Patton was qualified as an expert in the trafficking and use of narcotics. He testified that most drug traffickers carry weapons and that they often use rental vehicles, as happened here. He opined, without objection, that based upon all the facts, the defendant was about to engage in the distribution of the cocaine he possessed.

The defendant, through cross-examination of Detective Patton, showed that a user who wished to "free-base" cocaine would require a high level of purity; that a user who intended to convert this amount of cocaine to "crack" in order to smoke it would consume it in a "couple of days of smoking"; that an affluent user might be expected to buy one-half ounce of cocaine of this purity for his own use; and that no money was found on the person of the defendant.

To bolster the evidence of the defendant's intent to distribute, the State, relying heavily upon the case of *Anaweck v. State*, 63 Md.App. 239, 492 A.2d 658 (1985), offered proof of prior convictions of the defendant for possession of heroin with the intent to distribute. The State argued that evidence of prior convictions relevant to the question of intent is admissible as an "exception" to the general rule that evidence of other bad acts by a defendant should not be admitted.

Counsel for the defendant objected. He said: "If a guy said 'I purchased the cocaine from Eric Harris two days before, one day before,' as in the *Anaweck* case, that clearly is an indication of an exception that is allowed under the *Anaweck* case." He went on to argue, however, that convictions which had occurred more than two years earlier (and which necessarily related to transactions that had

occurred at an even earlier time [1]) were too remote to furnish relevant evidence of the defendant's present intent that was sufficiently strong to overcome the unfairly prejudicial effects of the evidence.

The trial judge, finding that the defendant's intent was at issue and that the prior convictions furnished relevant evidence bearing on that intent, overruled the defendant's objection and admitted the evidence. At the time the evidence was placed before the jury, and at the conclusion of all the evidence, the trial judge instructed the jury that the evidence of the defendant's prior convictions could be considered only as it related to the question of intent.

Considering the defendant's appeal, the Court of Special Appeals reviewed the history and development of the law dealing with the admissibility of evidence of crimes, wrongs, or acts other than those with which the defendant is charged. The intermediate appellate court offered considered criticism of the development of this aspect of the law in Maryland, concluding that uncritical analysis had caused a shift from the rule of inclusion originally formulated to a "spurious" rule of exclusion having limited exceptions. *Harris v. State, supra,* 81 Md.App. at 258–85, 567 A.2d 476. The Court held, however, that the evidence was admissible under either version of the rule.

We have re-examined the principles governing admissibility of evidence of other bad acts and have considered the current legal literature discussing the "inclusionary" and "exclusionary" approaches to the problem. We recognize that in some respects the question involves semantics— more particularly, how one defines the "rule" that shall ordinarily govern. In other and important respects, the question involves the desired implication of the rule and the necessity for effective application by those who will use it in a trial setting. For reasons to be discussed, we conclude

---

1. The convictions of 22 July 1985 related to crimes committed on 5 March and 17 April 1985.

that continued adherence to the "exclusionary" approach is appropriate.

When evidence of other bad acts is excluded, it is not because that evidence is irrelevant. The relevance of such evidence has been discussed, and its admissibility approved for other purposes, in a variety of cases. For example, evidence of prior bad acts has been held relevant to a determination of probable cause. *See United States v. Harris,* 403 U.S. 573, 580–81, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971) (reputation of defendant over preceding four years as "being a trafficker of nontaxpaid distilled spirits" properly considered in determining probable cause for search warrant); *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) ("that petitioner was a known user of narcotics made the charge against him much less subject to scepticism than would be such a charge against one without such a history"); *Malcolm v. State,* 314 Md. 221, 232–33, 550 A.2d 670 (1988) (prior criminal history properly considered in determining probable cause); *Gatewood v. State,* 244 Md. 609, 616, 224 A.2d 677 (1966) ("Knowledge of prior convictions of person observed is one of the elements to be considered in determining whether there is probable cause.").

Additionally, evidence of prior bad acts suggesting a vicious or criminal propensity has been held relevant in certain types of civil cases. For example, failure to make reasonable inquiry concerning the history of a prospective employee with respect to prior bad acts may, under some circumstances, constitute negligence on the part of an employer. *Henley v. Prince George's County,* 305 Md. 320, 503 A.2d 1333 (1986); *Cramer v. Housing Opportunities Comm'n,* 304 Md. 705, 501 A.2d 35 (1985).

First in England, and later in this country, it was recognized that evidence of other bad acts, although relevant and having some probative force, presented certain problems. Professor Stone, in his article *The Rule of Exclusion of Similar Fact Evidence: England,* 46 Harv.L.Rev. 954, 957–58 (1933) lists three concerns:

> In the first place, even though such similar facts might be of probative weight in relation to the fact alleged, they influence the minds of the jurymen unduly: "when the crime alleged is one of a revolting character . . . and the hearer is a person who has not been trained to think judicially, the prejudice must sometimes be almost insurmountable." Second, such evidence is said to be excluded because its introduction surprises the defendant unfairly, compelling him, at a moment's notice, to answer charges concerning the whole of his past life. Third, the introduction of such evidence is said to bring in collateral issues of which there would be no end. (Footnotes and citations omitted.)

The problem of surprise of which Professor Stone spoke in 1933 may have been somewhat alleviated by current disclosure and discovery procedures in criminal cases, or may be avoided by giving a defendant actual notice of the evidence that the State intends to introduce. The problem of injecting endless collateral issues into a case is largely avoided by granting the trial judge considerable discretion to determine, upon a proffer of evidence, whether clear and convincing evidence of the commission of the other bad acts can be produced without undue delay or confusion. *See Cross v. State*, 282 Md. 468, 478, 386 A.2d 757 (1978).

One may not so readily, however, prevent a jury from improperly using evidence of other bad acts or giving it more weight than it deserves. It is largely the fear that jurors will conclude from evidence of other bad acts that the defendant is a "bad person" and should therefore be convicted, or deserves punishment for other bad conduct and so may be convicted even though the evidence is lacking, that led to the policy that other bad acts should be excluded if they showed no more than that the defendant was a bad person.

Evidence of other bad acts may, however, be admissible if it is relevant to the offense charged on some basis other than mere propensity to commit crime, and if it passes muster under the ever-present test of balancing relevance

against unfair prejudice. The Supreme Court said in *Huddleston v. United States*, 485 U.S. 681, 686, 108 S.Ct. 1496, 1499–1500, 99 L.Ed.2d 771 (1988):

> The threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character.

This Court said in *State v. Faulkner*, 314 Md. 630, 634, 552 A.2d 896 (1989):

> Evidence of other crimes may be admitted, however, if it is substantially relevant to some contested issue in the case and if it is not offered to prove the defendant's guilt based on propensity to commit crime or his character as a criminal.

Similarly, the Court of Special Appeals said in *Waddell v. State*, 65 Md.App. 606, 610, 501 A.2d 865 (1985):

> [E]vidence of other crimes is admissible when the evidence is substantially relevant for some other purpose than to show that the accused committed the crime on trial because of his criminal character.

In the instant case, the Court of Special Appeals observed that the Maryland courts have tended, at least in recent times, to express the rule in exclusionary terms—that evidence of other bad acts is generally inadmissible unless it falls within certain exceptions. *Harris v. State, supra*, 81 Md.App. at 258–59, 567 A.2d 476. The intermediate appellate court pointed out that a potential vice of the exclusionary approach is that it suggests the existence of a finite number of "exceptions" to inadmissibility and that unless a proposed item of evidence can be matched with one of the exceptions it cannot be admitted. As we shall endeavor to make clear, admissibility of evidence of other bad acts is not confined to a finite list of exceptions, even under the exclusionary rule.

Evidence of other acts that has sufficient relevance, other than merely by showing criminal character, may be admissible. The so-called exceptions are helpful as classifications

of those areas where evidence has most often been found admissible even though it discloses other bad conduct, enabling the bar and bench to quickly focus upon the areas most likely to be involved. Yet, anointing "exceptions" as the keys to admissibility may direct attention away from the basic rule and its purpose and result in improper admission of evidence. For example, "intent" is listed as an exception to the rule of excluding other bad acts evidence. That does not mean, however, that whenever intent is an issue in a case, evidence of a prior bad act that is relevant to intent is automatically admissible. If the relevance of the prior bad act is limited to a showing of general criminal propensity, the evidence should be excluded.

When evidence of other bad acts is relevant for reasons other than general criminal propensity, the trial judge must determine "whether the accused's involvement in the other crimes is established by clear and convincing evidence." *State v. Faulkner, supra,* 314 Md. at 634, 552 A.2d 896; *see also State v. Cross, supra,* 282 Md. at 478, 386 A.2d 757. If this requirement is met, the trial judge must then carefully weigh the necessity for and probative value of the evidence of other bad acts against any unfair prejudice likely to result from its admission. *Id.* 314 Md. at 635, 552 A.2d 896.

How best, then, to state a rule that will most efficiently convey appropriate concern for the potential of unfair prejudice that necessarily accompanies evidence of other bad acts, without excluding evidence which possesses a special relevance transcending mere evidence of bad character and which outweighs the potential for unfair prejudice?

The inclusionary approach has a certain appeal and a logical basis. It recognizes that evidence of other bad acts usually has some relevance and that relevant evidence is usually admitted unless some good reason is shown to exclude it. The inclusionary rule carries with it a major qualification, however, perhaps best stated in the language of Fed.R.Evid. 404(b): "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person

in order to show action in conformity therewith." [2]  This "exception" to the general rule of admissibility reflects the concern to which we have earlier referred—that jurors will conclude from evidence of other bad acts that the defendant is a "bad person" and should therefore be convicted, or deserves punishment for other bad conduct and so may be convicted even though the evidence is lacking.  As the Advisory Committee points out in a note following Fed. R.Evid. 404(b):

> No mechanical solution is offered.  The determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other factors appropriate for making decisions of this kind under Rule 403.  (Citation omitted.)

In *Huddleston v. United States, supra,* the Supreme Court noted the argument of the defendant that "evidence of similar acts has a grave protential for causing improper prejudice," 485 U.S. at 686, 108 S.Ct. at 1499, and said, "We share petitioner's concern that unduly prejudicial evidence might be introduced under Rule 404(b)." *Id.* at 691, 108 S.Ct. at 1502.  The Court pointed out, however, that Rule 404(b) was not to be applied in a vacuum, but only after consideration of the requirements of other rules dealing with relevancy and with the need to determine "whether the probative value of the similar acts evidence is substantially outweighed by its potential for unfair prejudice." *Id.* Thus, if there is on the part of the trial judge a constant cognizance of the need for showing that the "evidence is probative of a material issue other than character," *Id.* at 686, 108 S.Ct. at 1499, coupled with an unremitting appreciation of the significant potential for unfair prejudice that is

---

**2.** Federal Rule of Evidence 404(b) in its entirety provides:
"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

**500**

likely to accompany the admission of other bad acts evidence, the necessary analysis and weighing functions are likely to produce an appropriate ruling. We believe the exclusionary approach is better calculated, however, to achieve that result.

By stating the rule in exclusionary form—evidence of other bad acts is generally not admissible—followed by an exception for those instances in which the evidence 1) has special relevance, i.e. is substantially relevant to some contested issue in the case and is not offered simply to prove criminal character, and 2) has probative force that substantially outweighs its potential for unfair prejudice, the focus is correct, and the burden is where it belongs. Considering the universe of possibilities and the evidence of other bad acts that probably could be found and offered against any defendant, the likelihood is that the relevance of most of the evidence would be limited to that of criminal character, i.e. evidence that the defendant is a bad person. This type of evidence, as we have said, is inadmissible. Accordingly, it will be the exceptional, and not the usual, case where the evidence of other bad acts is substantially relevant for reasons other than proof of criminal character. If that assumption is correct, and we believe it is, the exclusionary approach is certainly logical.

But quite apart from that, and perhaps more compelling in our choice of the approach most likely to produce a just result, is the need to ensure that adequate consideration be given to the conceded, but sometimes overlooked, potential for unfair prejudice that invariably accompanies the introduction of evidence of other bad acts. The exclusionary form of the rule clearly serves to remind the bench and bar that, unlike most other evidence, this evidence carries with it heavy baggage that must be closely scrutinized before admissibility is warranted. Finally, by employing the exclusionary approach, it is immediately clear that the party offering the evidence has a hurdle to overcome and must shoulder the burden of demonstrating relevance other than criminal character, as well as the burden of demonstrating

that the probative value substantially outweighs the potential for unfair prejudice.

■ We reinforce a point we have previously made—that the recognized "exceptions" to the exclusionary rule are not exclusive. We have said that evidence of other bad acts is most likely to have the requisite substantial relevance

> when it tends to establish (1) motive, (2) intent, (3) absence of mistake, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, and (5) the identity of the person charged with the commission of a crime on trial.

*Ross v. State*, 276 Md. 664, 669–70, 350 A.2d 680 (1976). This is a representative list of examples in which evidence has been found to meet the exception to the general rule of exclusion; it is not a laundry list of finite exceptions.[3]

■ Applying the principles we have discussed to the case before us, we conclude that evidence of the defendant's convictions for possession of heroin with intent to distribute two and one-half years before the instant offense should not have been admitted. Although the specific intent of the defendant was very much an issue, the evidence of prior convictions was relevant solely to show a much earlier disposition or propensity on the part of the defendant to distribute controlled dangerous substances, otherwise unrelated to the offense in question. Unless we are to hold, as some courts apparently have, that proof of intent may always be shown by proof of propensity or disposition, we cannot square the admission of this evidence with the policy decision previously made and reflected in the rule of evidence we have approved. We said in *Berger v. State*,

---

**3.** Federal Rule of Evidence 404(b) makes a similar distinction. After providing that evidence of other bad acts is not admissible to prove the character of a person in order to show action in conformity therewith, the Rule states that such evidence "may, however, be admissible for other purposes, *such as* proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." (Emphasis added.)

179 Md. 410, 414, 20 A.2d 146 (1941), that to be admissible "there must appear between the previous offense and that with which the defendant is charged some real connection other than the allegation that the offenses have sprung from the same disposition." We find no such "real connection" or special relevance here.

It is true, of course, that proof of the prior offenses involved here may be more relevant than would have been evidence of previous convictions for larceny or assault, but that is only because these prior offenses tend to show a particular disposition that is at issue, as opposed to showing only that the defendant is a person of bad character or has a disposition toward criminal activity in general. This increased relevance moves the case closer to the requisite special relevance, but under the facts of this case, not close enough. This is not a case where the defendant either possesses the drugs accidentally or for the requisite criminal purpose. Here, the possession could have been, as the defendant contended, for his own personal use. Thus, it was not a question of intentional versus accidental possession. The specific intent to distribute was the critical issue. Persons who distribute drugs may, and often do, make personal use of the same type of drugs. We are unable to say that proof of possession with intent to distribute two and one-half years before offers such strong probative evidence of the defendant's intent on this occasion that it should be received.

That is not to say that evidence of this kind will always be inadmissible to prove intent. As the Supreme Court noted in *Huddleston v. United States, supra,* 485 U.S. at 685, 108 S.Ct. at 1499:

> Extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct.

In *Bryant v. State,* 207 Md. 565, 586, 115 A.2d 502 (1955), this Court said:

Where intent is material, the conduct of the accused is relevant to show that intent. Hence, evidence of collateral offenses is admissible, on the trial of the main charge, to prove the intent. To be admissible as relevant, such offenses need not be exactly concurrent. If they are committed within such time, or show such relation to the main charge, as to make connection obvious, such offenses are admissible to show intent.

And, in *Harrison v. State,* 276 Md. 122, 155, 345 A.2d 830 (1975), we said:

Where the other crime is so linked in point of time or circumstances as to show intent or motive, the exclusion rule does not apply.

Here, the connection is not obvious, and the earlier crime is not closely linked in point of time or by other circumstances.

In *Anaweck v. State, supra,* 63 Md.App. at 242, 492 A.2d 658, a case relied upon by the Court of Special Appeals and by the trial court, the facts were quite different. During a lawful search of the home of Edward and Lena Anaweck, police found five plastic baggies of cocaine in a box located on a shelf of a closet in a first floor bedroom. Lena Anaweck was in the kitchen when the police entered. Edward was not at home. The evidence did not show that the bedroom in which the cocaine was found was that of either Lena or Edward. As the Court of Special Appeals pointed out in *Anaweck,* the State may have been able to establish a case of constructive possession against each of the defendants, but the case was difficult.

To bolster its evidence of possession, and to show an intent to distribute, the State offered evidence of events occurring one and two days before the search. Two days before the search, an undercover police officer observed Lena, in the presence of Edward, sell a package of cocaine to a neighbor for $280 in the kitchen of the Anawecks' residence. One day before the search, the neighbor made a controlled buy of cocaine for $280 from Edward and Lena, again in their kitchen.

The Court of Special Appeals correctly held that this evidence, although involving other and uncharged crimes, was admissible because of the strong inference that could be drawn from such evidence that both of the Anawecks knowingly possessed the cocaine found on the day of the search and that both possessed it with the intent to distribute it. The other offenses were "committed within such time, or show such relation to the main charge, as to make connection obvious...." *Bryant v. State, supra,* 207 Md. at 586, 115 A.2d 502. Evidence of those offenses possessed special relevance transcending mere criminal character. The necessity for the evidence was obvious; proof of the other acts was clear, convincing, and uncomplicated, and the probative value of the evidence clearly outweighed its potential for unfair prejudice.

The logic of *Anaweck* does not fit the facts of the case before us. Rather, we find on point our decision in *Ross v. State, supra.* In *Ross,* the defendant was charged with the possession of heroin with the intent to distribute. At issue was the admissibility of evidence that at some unspecified time in the past, the defendant and the witness had "work[ed] together selling narcotics." *Id.,* 276 Md. at 667, 350 A.2d 680. This Court held the evidence inadmissible, finding no special relevance, and indeed, questionable probative value even for criminal disposition.

> Proof that the accused had previously sold narcotics perhaps as long as 15 years before the crime charged in the indictment hardly tends to establish a disposition or propensity to commit the offense alleged, let alone an intent to do so.

*Id.* at 671–72, 350 A.2d 680. To the same effect, *see Thompson v. United States,* 546 A.2d 414 (D.C.App.1988).

The other crimes evidence in the instant case, showing no more than the sale of a similar controlled dangerous substance two and one-half years before the event in question, possesses no special relevance beyond general criminal propensity and should not have been admitted.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF CONVICTION OF POSSESSION OF COCAINE WITH INTENT TO DISTRIBUTE, AND TO REMAND THE CASE TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR A NEW TRIAL ON THAT CHARGE; COSTS IN THIS COURT TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE; COSTS IN THE COURT OF SPECIAL APPEALS TO BE PAID ONE-HALF BY PETITIONER AND ONE-HALF BY MAYOR AND CITY COUNCIL OF BALTIMORE.