632 A.2d 152

**Donald Warren JOHNSON**

v.

**STATE of Maryland.**

**No. 141, Sept. Term, 1992.**

Court of Appeals of Maryland.

Oct. 29, 1993.

458

Mark Colvin, Asst. Public Defender (Stephen E. Harris, Public Defender), Baltimore, on brief, for petitioner.

David P. Kennedy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., of MD), Baltimore, on brief, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

The issue this case presents is whether, when the defense to a charge of rape is that the victim was exchanging sex for drugs, the rape victim's admission to having previously engaged in such conduct is inadmissible pursuant to Maryland Code (1957, 1992 Repl.Vol.), Art. 27, § 461A ("the rape shield statute").[1] The Circuit Court for Anne Arundel County ruled that it is inadmissible and the Court of Special Appeals affirmed. *Johnson v. State,* 93 Md.App. 522, 613 A.2d 450 (1992). For the reasons hereinafter stated, we shall reverse.

---

1. *See* discussion *infra* part III.

## I.

The victim, who was addicted to crack cocaine, accused the petitioner and Robert Galloway,[2] *inter alia*, of raping her on the morning of March 9, 1991. According to the victim's testimony, her being raped was the culmination of an evening and night of drug use, which consumed all, or virtually all, of the victim's previous week's wages. Indeed, according to the victim's testimony, the rape occurred while she was attempting to make yet another purchase of cocaine, with funds obtained from a friend.

The petitioner's defense was that the sexual relations with the victim occurred while the victim was "freaking" for drugs, *i.e.* exchanging sex for drugs. He testified that one William Jackson promised the victim crack cocaine if she would engage in sexual relations, that offer being explicitly made to apply to sexual relations with both the petitioner and his co-defendant, as well as Jackson. The "sex in exchange for drugs agreement" was confirmed by co-defendant Galloway. When Jackson did not "pay" the victim, she accused the petitioner and his co-defendant of rape. In corroboration of his defense, the petitioner proffered that the victim had freaked for drugs in the quite recent past. He proposed to prove that fact through the cross-examination of the victim with regard to her prior sexual conduct. By filing a motion *in limine*, he sought a pre-trial ruling as to the propriety of doing so. *See Rainville v. State*, 328 Md. 398, 404–405, 614 A.2d 949, 952 (1992); *Prout v. State*, 311 Md. 348, 355–356, 535 A.2d 445, 448–449 (1988); *Watson v. State*, 311 Md. 370, 372, 535 A.2d 455 457 (1988); *Thomas v. State*, 301 Md. 294, 316, 483 A.2d 6, 17–18 (1984), *cert. denied*, 470 U.S. 1088, 105 S.Ct. 1856, 85 L.Ed.2d 153 (1985).

At an *in-camera* hearing, held to resolve the issue, *see* Article 27, § 461A(b),[3] the petitioner elicited testimony from

---

2. Robert Galloway was tried with and convicted of the same offenses as the petitioner; however, this appeal does not involve him since he has elected not to pursue an appeal.

3. Maryland Code (1957, 1992 Repl.Vol.) Article 27, § 461A(b) provides:

the victim that she had been freaking for crack cocaine for approximately six months, usually in Pioneer City, across the street from Meade Village, where the alleged rape occurred. She had freaked for crack cocaine most recently, she said, one week prior to being raped. The victim explained that when she wanted to get high, she would engage in sex for crack cocaine at anytime of the day or night. She specifically denied freaking for cocaine on this occasion or having previously engaged in sexual relations with either the petitioner or his co-defendant.

The trial court ruled that the rape shield statute rendered the evidence inadmissible. It reasoned:

> Then we're coming down that, three, that it supports a claim that the victim has an ulterior motive in accusing the Defendant; or four, it's offered for the purpose of impeachment. And what we find here is the defense is consent, and the defense wishes to put in prior sexual conduct of exchanging sex for drugs. None of these have occurred with the Defendants. So that rules them out on an issue of consent.

> Then we have to look then what is—assuming that it's relevant—which I'm not making that assumption yet, and assuming its material, we have to weigh its inflammatory versus prejudicial nature [sic]. The fact that she may have done it before—well, cases say that if one is a prostitute, that does not go to the issue of consent. Here just because she may have done it in the past, doesn't show me any ulterior motive or it's going to make it safe for her in the

---

(b) *In camera hearing.*—Any evidence [relating to specific instances of the victim's prior sexual conduct], may not be referred to in any statements to a jury nor introduced at trial without the court holding a prior in camera hearing to determine the admissibility of the evidence. If new information is discovered during the course of the trial that may make the evidence ... admissible, the court may order an in camera hearing to determine the admissibility of the proposed evidence....

community.[4]   That I just do not accept.   I have to believe that the prejudicial factor is greater than any probative factor as to that.

Now, what I was waiting for, curiously, if she would have denied this, and you had testimony to the fact to prove this, then it would have come in for impeachment purposes.   And that—but she has admitted to it.   So once she's admitted to it, it's not in for impeachment purposes.   And based on that just to let it in that she may have done this on other occasions, that is exchange sex for drugs over a six month period, I think does not qualify to let it become admissible. So I am going to deny the motion.

The jury convicted the petitioner of first and second degree rape, first and second degree sexual offense, perverted practices and battery.   The court sentenced him to a total of twelve years imprisonment.

Affirming, the Court of Special Appeals held that the trial court did not abuse its discretion in weighing the prejudicial impact of the proffered evidence against its probative value

in view of the great potential that the jury would have viewed the victim simply as a fallen woman and not focused on whether they believed her testimony that she was prepared to pay for the drugs as opposed to the testimony of appellant and Jackson that the understanding was that sex would be exchanged for drugs.

93 Md.App. at 538, 613 A.2d at 458.   The court further opined:

Whether the jury may have been more inclined to believe that the victim had consented on this occasion if it had been provided with the evidence that she had exchanged sex for drugs in the past is problematic,[5] since she made clear that

---

**4.**   The court was referring to a theory espoused by the defense that the victim may have been proceeding on the basis that, if a person did not pay for sex and if she accused that person of rape, no one else would dare try to rip her off again.

**5.**   The intermediate appellate court's concern that there could be "problems" with regard to whether, or not, the jurors would have believed the victim consented to sexual intercourse had they been advised of her

she had never engaged in sexual relations for drugs with the participants in this case. The net effect of admitting the evidence of prior sexual conduct would have been that the proceedings could have been refocused on an inquiry into prior sexual encounters with other partners.

*Id.* at 537–38, 613 A.2d at 458.

## II.

The petitioner asserts that the proffered testimony that the victim habitually freaked for crack cocaine is highly probative; it is relevant, and material, to whether, on the night in question, she actually was freaking for crack cocaine, but became angry when she did not receive the promised consideration. This, he submits, "supports a claim that the victim had an ulterior motive in accusing the defendant of the crime." § 461A(a)(3).[6] The petitioner also posits that if, notwithstanding its relevance, materiality, and high probative value, the proffered testimony is nevertheless inadmissible because it does not fit within an enumerated exception, then the rape shield statute is unconstitutional as conflicting with his rights of confrontation, to present a defense, and to due process.

Citing *White v. State,* 324 Md. 626, 598 A.2d 187 (1991), the State maintains that the trial court did not abuse its discretion when it decided that the evidence that the victim's past sexual

---

prior "freaking" activities is not a reason to deny the defendant the opportunity fully to present his defense.

**6.** The petitioner also maintains that the prosecutor put the victim's prior sexual conduct at issue, *see* § 461A(a)(4), by eliciting on direct examination her testimony that, when she was told to get down on her hands and knees, she said to the petitioner and his co-defendant that she was not there to freak for drugs, but she had the money to pay for them. This kind of evidence, by itself, does not place the victim's past sexual activity at issue. We believe that what is intended by that exception is that the State elicit affirmative evidence to characterize the victim's past sexual conduct. If, for example, the State had elicited evidence that, when raped the victim was a virgin, it may have placed the victim's prior sexual conduct at issue. In that event, the defendant may then be able to rebut with evidence which tends to prove the contrary. *See Lowery v. State,* 202 Md. 314, 319, 96 A.2d 20, 23 (1953).

activity was not sufficiently linked to the facts of the case to be relevant to the victim's alleged motive to falsify the rape charge. Moreover, it asserts that the trial court exercised sound discretion in concluding that the prejudicial impact of the evidence of the victim's past sexual activity far outweighed its probative value. Finally, the State contends that the constitutional issue is not preserved for review. If preserved, however, the State says that the petitioner's argument is without merit because the proffered evidence is irrelevant; there is no constitutional right to the admission of irrelevant evidence.

### III.

The rape shield statute provides, in pertinent part: (a) *Evidence relating to victim's chastity.*—Evidence relating to a victim's reputation for chastity and opinion evidence relating to a victim's chastity are not admissible in any prosecution for commission of a rape or sexual offense in the first or second degree. Evidence of specific instances of the victim's prior sexual conduct may be admitted only if the judge finds the evidence is relevant and is material to a fact in issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value, and if the evidence is:

(1) Evidence of the victim's past sexual conduct with the defendant; or

(2) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, disease, or trauma; or

(3) Evidence which supports a claim that the victim has an ulterior motive in accusing the defendant of the crime; or

(4) Evidence offered for the purpose of impeachment when the prosecutor puts the victim's prior sexual conduct in issue.

Maryland Code (1957, 1992 Repl.Vol.) Article 27, § 461(a). To be admissible, evidence of specific instances of a victim's past

sexual conduct must fit within one of the enumerated exceptions and be found by the trial court to be relevant and material to a fact at issue in the case and to have probative value greater than its inflammatory or prejudicial nature. Section 461A(a)(3), pertaining to a rape victim's ulterior motive for making a false accusation, is statutory recognition of the defendant's right to inquire into the bias or prejudice of the victim. That right of inquiry is conditioned, as are the other exceptions, at the threshold, however, on the prior sexual conduct evidence having special relevance to a material issue in the case, and its probative value being greater than its prejudicial impact. The latter requirement reflects the legislative intent to exclude evidence whose only relevance is to prove the victim's reputation for chastity. This is consistent with the purpose this Court has attributed to the weighing process required to be conducted when prior bad acts evidence is sought to be admitted against a defendant. *See Harris v. State,* 324 Md. 490, 498, 597 A.2d 956, 960 (1991); *Howard v. State,* 324 Md. 505, 514, 597 A.2d 964, 968 (1991).

A trial court's ruling on the admissibility of specific instances of a victim's past sexual conduct is subject to review on an abuse of discretion standard. *White,* 324 Md. at 637, 598 A.2d at 192. *See Thomas,* 301 Md. at 317, 483 A.2d at 18. *See also State v. Allewalt,* 308 Md. 89, 101–02, 517 A.2d 741, 747 (1986).

The rape shield statute was enacted in response to trial courts admitting, as a matter of course, in rape cases, evidence of the victim's chastity or lack of chastity whenever the defense of consent was raised. *See Giles v. State,* 229 Md. 370, 397–80, 183 A.2d 359, 363 (1962), *vacated and remanded on other grounds,* 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967); *Humphries v. State,* 227 Md. 115, 121, 175 A.2d 777, 780 (1961). It was enacted, therefore,

" 'to prevent defense counsel from putting the victim 'on trial,' from unfairly invading the victim's privacy, and from deflecting the jury's attention from the true issue. The rule reflects recognition that the trial process at best is traumatic to the victim of sexual abuse. If she had reason to

believe that the most intimate details of her life are going to be bandied about the court room, many victims will decide that the game is not worth the candle and decline to file a complaint.'"

*White,* 324 Md. at 634, 598 A.2d at 634, quoting *Goodson v. State,* 566 So.2d 1142, 1149–50 (Miss.1990). Although anticipating an increase in the number of reported rapes, the legislative intention was not to prevent a defendant from being able to present a defense to a rape charge or to hamstring him or her unduly in his or her effort to do so:

"[The committee] took cognizance of the broad based support of the concept of limiting evidence relating to prior sexual conduct of a rape victim and that such a limitation would probably result in an increase in the percentage of rapes reported; that a statutory response to the inherent sensitivities of a traumatized victim could accommodate the constitutionally mandated rights and protections properly afforded a defendant in our criminal justice system; and that the weighing of inflammatory nature *versus* the probative value of specific instances of prior sexual conduct precludes possible admission of highly prejudicial evidence of limited probative value. Presently, it is the practice of some courts to admit evidence of any probative value irrespective of its inflammatory nature."

Report of Senate Judicial Proceedings Committee on Senate Bill No. 399 at 4; *See also White,* 324 Md. at 636, 598 A.2d at 192.

### IV.

The petitioner seeks to prove that not only are the victim's prior "freaking" activities relevant, material and non-prejudicial, but that her rape allegation is but a vindictive response to not receiving drugs for the sexual relations she engaged in with the petitioner. It is this frame of mind that the petitioner alleges supports his claim that she had an ulterior motive in falsely accusing him of rape. He posits that from proof that she was freaking for cocaine but was not "paid" the agreed consideration, a trier of fact could infer her frame of mind,

from which it could then infer and, thus, conclude that the victim's testimony was infected with bias and prejudice against the defendants.

*Smallwood v. State*, 320 Md. 300, 302, 577 A.2d 356, 356 (1990), involved the extent to which cross-examination to uncover a witness's prejudice and bias is permitted. The defendant was charged with robbing a retail store, The Gap, by taking boxes of clothing. Tracing the license tag of the car in which the robber effected his getaway led to the defendant's ex-girlfriend, who, on the day she spoke to the police, had broken up with the defendant and had filed assault charges against him. Testifying for the State, she said that she regularly loaned her car to the defendant and that, on one particular Thursday in April, the defendant both failed to pick her up from work and gave her some clothing which bore price tags from The Gap. Contending that it went to the witness's bias, interest, or motive to lie, the defendant sought to cross-examine his ex-girlfriend concerning the outcome of assault charges she had previously brought against him. The court refused to allow it. 320 Md. at 302–03, 577 A.2d at 357. Urging that the ruling was prejudicial error, 320 Md. at 304, 577 A.2d at 357, the defendant argued that the witness' failure to obtain convictions in the previous cases was evidence of her vindictiveness, which he should have been allowed to demonstrate to the jury so that they would be able adequately to assess the witness' testimony. *Id.*

Having reviewed pertinent Supreme Court cases, *e.g., Delaware v. Van Arsdall*, 475 U.S. 673, 678–79, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674, 682–83 (1986); *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) and Maryland appellate decisions, in particular, *Cumberland and Western Port Transit Company v. Metz*, 158 Md. 424, 149 A. 4, *reargument denied*, 158 Md. 424, 149 A. 565, *appealed dismissed sub nom., American Oil Company v. Metz*, 282 U.S. 801, 51 S.Ct. 40, 75 L.Ed. 720 (1930) (cross-examination should be allowed in order to determine the reasons for acts or statements referred to on direct examination), we concluded in *Smallwood:*

A judge must allow a defendant wide latitude to cross-examine a witness as to bias or prejudice, *Bruce* [*v. State* ], 318 Md. [706], 727, 569 A.2d [1254], 1265 [ (1990) ], but the questioning must not be allowed to stray into collateral matters which would obscure the trial issues and lead to the factfinder's confusion. [*State v.* ] *Cox,* 298 Md. [173,] 178, 468 A.2d [319,] 321 [ (1983) ].

320 Md. at 307–08, 577 A.2d at 359. We rejected the trial court's conclusion that the proffered evidence was irrelevant to the defendant's guilt or innocence and would have led to the jurors being confused about, or disregarding, what they were to decide. *Id.* at 309, 577 Md. at 360. We also said:

> [F]or purposes of cross-examination of a prosecution witness *in order to show bias or motive,* "[T]he crux of the inquiry insofar as its relevance is concerned, is the witness' state of mind. What is essential to the preservation of the right to cross-examine is that the interrogator be permitted to probe into whether the witness is acting under a hope or belief of leniency or reward,"

or out of spite or vindictiveness. (Emphasis in original). *Smallwood,* 320 Md. at 309–310, 577 A.2d at 360, quoting with approval, *Brown v. State,* 74 Md.App. 414, 420–21, 538 A.2d 317, 320 (1988), quoting *Fletcher v. State,* 50 Md.App. 349, 359, 437 A.2d 901, 906 (1981). The inquiry sought to be made in *Smallwood,* we were convinced,

> had substantial probative force and there was no indication that defense counsel was harassing the witness by asking an unfounded question or seeking primarily to embarrass the witness,

*Id.,* 320 Md. at 310, 577 A.2d at 360–361, quoting *Cox,* 298 Md. at 184, 468 A.2d at 324, and "went to the 'very heart' of [the witness's] bias.' " *Id.*

The Court of Special Appeals reached a similar result in a statutory rape case, decided prior to enactment of the rape shield statute. In *State v. DeLawder,* 28 Md.App. 212, 344 A.2d 446 (1975), that court held that evidence of bias or motive to lie is relevant when the defendant denies having carnal

knowledge of the victim and, therefore, is admissible pursuant to the constitutionally-based right of effective cross-examination. *Id.* at 226–27, 344 A.2d at 454–55, relying on *Davis,* 415 U.S. at 315–317, 320, 356, 94 S.Ct. at 1110, 1112, 39 L.Ed.2d at 353–354. In *DeLawder,* "the defense strategy [was] to discredit the prosecuting witness by revealing her possible biases, prejudices, or ulterior motives." *Id.,* 28 Md.App. at 220, 344 A.2d at 451. He proposed to do so by proving that, when she accused him, the victim thought she was pregnant by someone else and, therefore, accused the defendant of raping her, "because she was afraid to tell her mother she voluntarily had sexual intercourse with others." *Id.* That strategy then required the defendant to establish the victim's prior acts of sexual intercourse as a predicate to establishing her ulterior motive. *Id.*

The issue in *White* was quite different. There, the defendants admitted that the rape victim had been in their van, but denied that they engaged in sexual relations with her. They contended that the victim had falsely accused them of rape. In support of that defense, they proffered that a witness would testify that the victim had engaged in sex for drugs with him. They also alleged that the false accusation was prompted by the victim's desire to avoid the certain wrath of her fiancé were he to learn that she had been out smoking cocaine with two men. 324 Md. at 637, 598 A.2d at 193. The Court rejected both rationales, noting that the "[p]roffered evidence of past sexual conduct must contain a direct link to the facts at issue in a particular case before it can be admitted." *Id.* at 638, 598 A.2d at 193. We opined:

> The Whites proffered that Luther Moore's testimony would establish Nicole's motives to make a false complaint of rape. Their first contention is that Nicole may have falsely accused them of rape because she was angry that they had not obtained more cocaine for her. Her anger was the result of their failure to procure drugs, not their failure to trade drugs for sex. Even adopting the Whites' contention, it was not their declining of Nicole's offer of sex that motivated the false charge; it was their declining her re-

quest for drugs. Any prior sexual acts or prior sexual solicitations by Nicole could have little, if any, relevance to her alleged anger at the Whites. In addition, the fact that Nicole may have successfully offered or traded sex for drugs in the past does not tend to show that she would become enraged with the Whites for failing to supply her with drugs and declining her alleged sexual solicitation. Luther Moore's testimony would have dubious relevance to establishing that Nicole had an ulterior motive to lie, whereas its prejudice to Nicole and the State would be extreme.

The Whites also allege that Nicole might have fabricated a rape story so that her fiancé would not get mad because she had been out smoking cocaine with two men. Luther Moore's proffered testimony provides no support for this contention. Whether Nicole may have smoked cocaine in the past is irrelevant to any alleged fear of her fiancé's reaction if he ever found out that she had been smoking cocaine.

324 Md. at 637, 598 A.2d at 192–193. The *White* court was also concerned that the witness's testimony would

paint a picture of the victim as an immoral person who sells herself for illegal drugs. In that manner, the Whites might refocus the trial on Nicole's character, one of the results that the rape shield statute is meant to guard against. . . .

*White,* 324 Md. at 638, 598 A.2d at 193.

In the case *sub judice,* the parties agree, unlike in *White,* that sexual contact occurred. The petitioner avers that the victim was freaking for cocaine, of which he was a beneficiary, but became angry when neither Jackson, Galloway, nor the petitioner gave her the drugs she had been promised. On the other hand, although she has admitted freaking for drugs in the past, and as recently as within one week prior to the alleged rape, the victim, says that she was raped. This Court has to decide, therefore, whether the victim's admission has special relevance to this critical issue. In the event that we conclude that it does, then the Court must determine whether

the trial court abused its discretion when it determined that its probative value was outweighed by its prejudicial effect.

It is well settled in Maryland that where intent is at issue, proof of a defendant's prior conduct may be admissible to prove the defendant's intent. *See Harris*, 324 Md. at 502–03, 597 A.2d at 962–63; *Harrison v. State*, 276 Md. 122, 155, 345 A.2d 830, 849 (1975); *Bryant v. State*, 207 Md. 565, 586, 115 A.2d 502, 511 (1955). *See also Huddleston v. United States*, 485 U.S. 681, 685, 108 S.Ct. 1496, 1499, 99 L.Ed.2d 771, 780 (1988) ("Extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct."). Such evidence is admissible, even if not directly concurrent, when the subject acts "are committed within such time, or show such relation to the main charge, as to make connection obvious," *Bryant*, 207 Md. at 586, 115 A.2d at 511, that is to say, they are "so linked in point of time or circumstances as to show intent or motive." *Harrison*, 276 Md. at 155, 345 A.2d at 849.

In *Harris*, the issue was whether the defendant had the specific intent to distribute controlled dangerous substances. To prove that he did, the State offered, and the trial court admitted, as substantive evidence in its case in chief, two of the defendant's prior convictions for possession of heroin with intent to distribute, both more than two years old. We held that the convictions were inadmissible. What was missing was, we noted, "some real connection between the prior convictions and the offense on trial other than the allegation that the offenses have sprung from the same disposition." 324 Md. at 502, 598 A.2d at 962, quoting *Berger v. State*, 179 Md. 410, 414, 20 A.2d 146, 148 (1941). We explained:

It is true, of course, that proof of the prior offenses involved here may be more relevant than would have been evidence of previous convictions for larceny or assault, but that is only because these prior offenses tend to show a particular disposition that is at issue, as opposed to showing only that

the defendant is a person of bad character or has a disposition toward criminal activity in general. This increased relevance moves the case closer to the requisite special relevance, but under the facts of this case, not close enough. This is not a case where the defendant either possesses the drugs accidentally or for the requisite criminal purpose. Here, the possession could have been, as the defendant contended, for his own personal use. Thus, it was not a question of intentional versus accidental possession. The specific intent to distribute was the critical issue. Persons who distribute drugs may, and often do, make personal use of the same type of drugs. We are unable to say that proof of possession with intent to distribute two and one-half years before offers such strong probative evidence of the defendant's intent on this occasion that it should be received.

*Id.*

██ By way of contrast, in *Anaweck v. State,* 63 Md.App. 239, 246, 492 A.2d 658, 662 (1985), the State sought to bolster its evidence that the defendant possessed cocaine with intent to distribute by offering evidence of events that occurred prior to his arrest. That evidence was that two days before the defendant's premises were searched, an undercover police officer witnessed one of the defendants, in the presence of the other, sell cocaine to a neighbor and that, on the day before the search, another neighbor made a controlled buy of cocaine from the defendants, both sales occurring in the defendant's home. In *Harris,* we agreed with the Court of Special Appeals that such evidence "had special relevance transcending mere criminal character." 324 Md. at 504, 598 A.2d at 963. *See also Ross v. State,* 276 Md. 664, 671–72, 350 A.2d 680, 685 (1976). Like intent, motive is a mental state, the proof of which necessarily requires inferences to be drawn from conduct or extrinsic acts.

██ As we have seen, the critical issue in this case is whether, on this occasion, the victim was freaking for cocaine or was raped. And, because these are the only possible

explanations for what occurred, evidence that she has freaked for cocaine in the past and, particularly, the very recent past, has special relevance [7] to that issue; such evidence transcends mere evidence of bad character or, in the context of this case, sexual promiscuity. In turn, it is relevant to, and probative of, the victim's motive. From a finding that on this occasion she was freaking for cocaine but did not receive the bargained for cocaine, the jury could then infer that the victim had an ulterior motive for making a false accusation of rape against the petitioner.

When the petitioner cross-examined the victim concerning her previously having freaked for cocaine, his purpose was not to show that she was a person of bad character—a sexually promiscuous person, see *Smallwood,* 320 Md. at 304, 577 A.2d at 357–58; rather, it was to show that she had the disposition, displayed at some earlier time, to engage in such conduct and from that conduct coupled with her not having been paid, that she falsely accused him of rape. Proof of that particular disposition is relevant and material to the threshold determination whether, on the occasion in question, the victim was, as the petitioner alleged, freaking for cocaine. How relevant and material depends upon the facts and circumstances of the case, including the strength of the disposition evidence, *e.g.,* its closeness in point of time to the incident in question. Her disposition to freak for cocaine was established when the victim admitted having engaged in the relevant behavior over a six-month period and as recently as within a week of the alleged rape. Her testimony also identified other relevant

---

7.  Evidence is relevant (and/or material) when it has a tendency to prove a proposition at issue in the case. *Dorsey v. State,* 276 Md. 638, 643, 350 A.2d 665, 668–669 (1976); *McEwen v. State,* 194 Md. 492, 500–501, 71 A.2d 464, 468 (1950); *Kennedy v. Crouch,* 191 Md. 580, 585, 62 A.2d 582, 585 (1948) ("It is an elementary rule that evidence, to be admissible, must be relevant to the issues and must tend either to establish or disprove them, and evidence which does not tend to describe or explain the facts and circumstances of the case is inadmissible."); *Pearson v. State,* 182 Md. 1, 13, 31 A.2d 624, 629 (1943); Edward W. Cleary, et al., *McCormick's Handbook of the Law of Evidence* §§ 184, 185, at 433–434 (2nd ed. 1972).

factors: she testified that her addiction for cocaine caused her to engage in sex for cocaine at any time of the day or night and she described her eight hours of drug use just prior to the alleged rape. When the victim's admissions, especially as to the proximity of the last act of freaking to the subject incident, and her testimony as to the effect of her addiction and of her activities that night are considered with the petitioner's testimony that the victim was not "paid," the evidence before the court certainly had the tendency to prove conduct on the part of the victim occurring within such time and under such circumstances as to make connection between the prior conduct and that which is the subject of the trial obvious," *Harris,* 324 Md. at 503, 597 A.2d at 963, and from which the victim's motive could be inferred. To be sure, in *White,* this Court stated that the relationship between the prior sexual conduct evidence and the ulterior motive must be direct. 324 Md. at 638, 598 A.2d at 193. That does not mean, however, that the connection must be the most direct, such as to exclude any other possible interpretation of the evidence, or even that it be the most reasonable one. *See Lowery,* 202 Md. at 318–19, 96 A.2d at 22. *See also DeLawder,* 28 Md.App. at 220, 344 A.2d at 448. Indeed, in *White,* the issue was not whether the victim had exchanged sex for drugs, but rather, whether she had been raped at all. Under the circumstances, there could be no *direct* relationship between the proffered testimony of the witness who would have testified to the victim's having previously engaged in sex for drugs with him and the ulterior motives the defendant offered in defense. That is not the case here.

■■■■ To be admissible, the inflammatory or prejudicial nature of the evidence must be outweighed by its probative value. The responsibility for conducting this balancing is entrusted in the first instance to the trial court. In arriving at the proper balance, not only must the evidence's special relevance and potential for prejudice be considered, but its necessity, *i.e.,* whether other means of proof are available, and other relevant factors must be assessed as well. *Harris v.*

*State,* 324 Md. at 498–99, 597 A.2d at 959. This is best accomplished

> if there is on the part of the trial judge a constant cognizance of the need for showing that the "evidence is probative of a material issue other than character," ... coupled with an unremitting appreciation of the significant potential for unfair prejudice that is likely to accompany the admission of [specific acts of sexual conduct,] the necessary analysis and weighing functions are likely to produce an appropriate ruling.

*Id.* at 499–500, 597 A.2d at 961, quoting *Huddleston v. United States,* 485 U.S. at 786, 108 S.Ct. at 1499, 99 L.Ed.2d at 780 (1988).

██ Evidence is probative if it tends to prove the proposition for which it is offered. *Dorsey,* 276 Md. at 643, 350 A.2d at 668–669. The stronger the connection between the evidence and the proposition—the greater the tendency of proof—the more probative the evidence is. Thus, evidence that the victim freaked for cocaine one week prior to the alleged rape does not have the same probative force—in fact, it is weaker—than evidence that she had freaked for cocaine the day before or an hour before. On the other hand, it is more probative than that she had done so within the six months before the alleged rape. Hence, the probative value of the evidence is relative, depending upon the facts and circumstances of the particular case. As was the case with proof of motive, the facts and circumstances include the effect of the victim's addiction, and her activities during the eight hours prior to the alleged rape and, thus, help to determine just how probative the sexual conduct evidence actually is. On the other hand, it can not be gainsaid that evidence of the victim's prior sexual conduct is not prejudicial to the victim and the State.

We hold, under the facts *sub judice,* that the trial court abused its discretion when it determined that the prejudicial effect of the evidence outweighed its probative value. First, there is a close connection between the sexual conduct evi-

dence and the petitioner's defense; in order to establish that he was falsely accused because the victim did not get the cocaine she was promised, it was necessary for the petitioner to establish the basis of the bargain. Moreover, viewed in light of the victim's activities during the hours preceding the alleged rape, and her addiction and its effect on her (causing her to have sex for cocaine at any time of the day or night when she wanted to get high), the evidence that she freaked for cocaine within a week of the alleged rape is highly probative. Furthermore, there is little danger that the evidence will be misused by the jury, that its attention will be diverted from the real issue in the case. As we have seen, rather than offer extrinsic evidence of the fact to be proved, the petitioner elicited the admission from the victim herself; at the in-camera hearing the court held on the subject, the victim made the admission the petitioner sought. Thus, this is not a case in which the jury is required to credit testimony from an extrinsic source, in the face of denial by the victim. Finally, the evidence is necessary to the petitioner's defense. The central focus of this case is the very issue upon which the contested evidence relates: whether the victim, in fact, engaged in sex for drugs rather than being raped. Inasmuch as the petitioner's defense was clear, uncomplicated, and not inherently unbelievable, the probative value of the evidence to prove it outweighed, substantially, its potential for unfair prejudice.

Cases from other jurisdictions reach the same result on confrontation grounds. *See State Ex Rel. Pope v. Mohave Superior Court,* 113 Ariz. 22, 545 P.2d 946, 953 (1926) (evidence of victim's reputation as prostitute and prior acts of prostitution admissible to support defense of consent to act of prostitution); *People v. Varona,* 143 Cal.App.3d 566, 192 Cal. Rptr. 44, 46 (1983); *Commonwealth v. Joyce,* 382 Mass. 222, 415 N.E.2d 181, 186–87 (1981) (despite the fact that Massachusetts' rape shield statute does not contain an ulterior motive exception, evidence of prior instances of prostitution offered to prove victim's bias or motive to lie held admissible. "Where . . . facts are relevant to a showing of bias or motive to lie, the

general evidentiary rule of exclusion must give way to the constitutionally based right of effective cross-examination."); *People v. Slovinski*, 166 Mich.App. 158, 420 N.W.2d 145, 153–56 (1988) (prior acts of the victim's prostitution admissible on issue of consent, to vindicate defendant's due process and confrontation rights); *State v. Howard*, 121 N.H. 53, 426 A.2d 457 (1981) (right of confrontation may require admission of specific acts of sexual conduct of statutory rape victim when defense is denial of contact); *State v. Jalo*, 27 Or.App. 845, 557 P.2d 1359 (1976) (rape shield statute which did not permit evidence of victim's ulterior motive infringed upon the defendant's confrontation right); *State v. Herndon*,[8] 145 Wis.2d 91, 426 N.W.2d 347 (1988) (same); *Commonwealth v. Black*, 337 Pa.Super. 548, 487 A.2d 396 (1985) (same). *See also People v. McNab*, 144 Misc.2d 612, 544 N.Y.S.2d 930, 931 (S.Ct.1989) (evidence of prior exchanging of sex with another man admissible only on cross-examination of the victim).

These cases are not inconsistent with the result we reach in this case. The statutes they interpret contained no ulterior motive exception and, because the evidence was deemed highly probative, the right of confrontation is required to be used to admit it. *See also DeLawder*, 28 Md.App. at 226–227, 344 A.2d at 454–455. Maryland's statute contains an ulterior motive exception, hence, resort to the right of confrontation was not required. *See Anderson v. State*, 328 Md. 426, 614 A.2d 963 (1992) ("[C]onstruction of a statute which would cast doubt on its constitutional validity should be avoided.").

Our decision today does not mean that prior sexual conduct evidence will always be admissible. We leave to future determination on a case-by-case basis, whether and when evidence of this nature, offered in a different factual context, will be admitted.

---

8. A portion of the Wisconsin rape shield statute was declared unconstitutional in *Herndon*. However, two years later in *State v. Pulizzano*, 155 Wis.2d 633, 456 N.W.2d 325, 330 (1990), the Supreme Court of Wisconsin overruled that portion of the *Herndon* decision.

JUDGMENT OF THE COURT OF SPECIAL APPEALS
REVERSED. CASE REMANDED TO THAT COURT
WITH INSTRUCTIONS TO REMAND TO THE CIRCUIT
COURT FOR ANNE ARUNDEL COUNTY FOR A NEW
TRIAL. COSTS IN THIS COURT AND IN THE COURT
OF SPECIAL APPEALS TO BE PAID BY THE ANNE
ARUNDEL COUNTY.