*Sean Urbanski v. State of Maryland*, No. 1318, September Term 2020.

**CONSTITUTIONAL LAW > FREEDOM OF SPEECH, EXPRESSION, AND PRESS**

The First Amendment affords protection to symbolic or expressive conduct as well as to actual speech. U.S. Const. Amend. 1.

**CONSTITUTIONAL LAW > FREEDOM OF SPEECH, EXPRESSION, AND PRESS**
          **ABSOLUTE NATURE OF RIGHT**

The right to freedom of speech is not absolute at all times and under all circumstances. U.S. Const. Amend. 1.

**CIVIL RIGHTS > OFFENSES AND PENALTIES**
          **CONSTITUTIONAL AND STATUORY PROVISIONS**

**CONSTITUTIONAL LAW > FREEDOM OF SPEECH, EXPRESSION, AND PRESS**
          **LAW ENFORCEMENT; CRIMINAL CONDUCT**
          **BIAS OR HATE CRIMES**

First Amendment does not protect bias-motivated speech, coupled with non-verbal proscribed conduct. U.S. Const. Amend. 1; Md. Code Ann., Crim. Law § 10-304.

**CIVIL RIGHTS > OFFENSES AND PENALTIES**
          **CONSTITUTIONAL AND STATUORY PROVISIONS**

**CONSTITUTIONAL LAW > FREEDOM OF SPEECH, EXPRESSION, AND PRESS**
          **LAW ENFORCEMENT; CRIMINAL CONDUCT**
          **BIAS OR HATE CRIMES**

First Amendment does not protect violent acts. U.S. Const. Amend. 1; Md. Code Ann., Crim. Law § 10-304.

**CONSTITUTIONAL LAW > FREEDOM OF SPEECH, EXPRESSION, AND PRESS**
          **FIRST AMENDMENT IN GENERAL**
          **PARTICULAR ISSUES AND APPLICATIONS**

First Amendment does not erect per se barrier to admission of evidence concerning defendant's beliefs and associations at sentencing, simply because those beliefs and associations are protected by First Amendment. U.S. Const. Amend. 1.

**CONSTITUTIONAL LAW > FREEDOM OF SPEECH, EXPRESSION, AND PRESS**
      **JUDICIAL PROCEEDINGS**
      **CRIMINAL PROCEEDINGS**
      **ADMISSIBILITY OF EVIDENCE**

**CRIMINAL LAW > EVIDENCE**
      **FACTS IN ISSUE RELEVANCE**
      **MOTIVE OR ABSENCE OF MOTIVE**

First Amendment does not prohibit evidentiary use of speech to establish elements of crime or to prove motive or intent. U.S. Const. Amend. 1.

**CONSTITUTIONAL LAW > FREEDOM OF SPEECH, EXPRESSION, AND PRESS**
      **JUDICIAL PROCEEDINGS**
      **CRIMINAL PROCEEDINGS**
      **ADMISSIBILITY OF EVIDENCE**

**CRIMINAL LAW > EVIDENCE**
      **FACTS IN ISSUE RELEVANCE**
      **MOTIVE OR ABSENCE OF MOTIVE**

Violent speech can be admissible evidence to show motive or intent because the First Amendment does not prohibit evidentiary use of speech to establish elements of crime or to prove motive or intent. U.S. Const. Amend. 1.

**CRIMINAL LAW > REVIEW**
      **DISCRETION OF LOWER COURT**
      **RECEPTION AND ADMISSIBILTY OF EVIDENCE**

Generally, an appellate court reviews a trial court's admission of evidence for abuse of discretion.

**CRIMINAL LAW > EVIDENCE**
      **FACTS IN ISSUE AND RELEVANCE**
      **RELEVANCY IN GENERAL**

Evidence is relevant or material when it has tendency to prove proposition at issue in case.

**CRIMINAL LAW > REVIEW**
**HARMLESS AND REVERSIBLE ERROR**
**ADMISSION OF EVIDENCE**

Appellate court is generally loath to reverse a trial court unless the evidence is plainly inadmissible under a specific rule or principle of law or there is a clear showing of an abuse of discretion.

**CRIMINAL LAW > EVIDENCE**
**OTHER MISCONDUCT BY ACCUSED**
**NATURE AND CIRCUMSTANCES OF OTHER**
**MISCONDUCT AFFECTING ADMISSIBILITY**
**TEMPORAL RELATION OF EVENTS**
**RELEVANCY IN GENERAL**

Evidence of defendant's prior conduct is admissible, even if not directly concurrent, when acts are committed within such time, or show such relation to main charge, as to make connection obvious.

**CRIMINAL LAW > NATURE AND ELEMENTS OF CRIME**
**CRIMINAL INTENT AND MALICE**
**MOTIVE**

**CRIMINAL LAW > EVIDENCE**
**CRIMINAL INTENT AND MALICE**
**OTHER MISCONDUCT BY ACCUSED**
**OTHER MISCONDUCT SHOWING MOTIVE**

Motive is mental state, proof of which necessarily requires inferences to be drawn from conduct or extrinsic acts.

**CRIMINAL LAW > EVIDENCE**
**FACTS IN ISSUE AND RELEVANCE**
**RELEVANCY IN GENERAL**
**EVIDENCE CALCULATED TO CREATE PREJUDICE**
**AGAINST OR SYMPATHY FOR ACCUSED**

To be admissible, inflammatory or prejudicial nature of evidence must be outweighed by its probative value.

**CRIMINAL LAW > EVIDENCE**
    **FACTS IN ISSUE AND RELEVANCE**
    **RELEVANCY IN GENERAL**
    **EVIDENCE CALCULATED TO CREATE PREJUDICE**
    **AGAINST OR SYMPATHY FOR ACCUSED**

Responsibility for balancing prejudicial nature of evidence against its probative value is entrusted to trial court.

**CRIMINAL LAW > EVIDENCE**
    **FACTS IN ISSUE AND RELEVANCE**
    **RELEVANCY IN GENERAL**
    **EVIDENCE CALCULATED TO CREATE PREJUDICE**
    **AGAINST OR SYMPATHY FOR ACCUSED**

Evidence tending to prove guilt is prejudicial to an accused, but the mere fact that such evidence is powerful because it accurately depicts the gravity and atrociousness of the crime or the callous nature of the defendant does not thereby render it inadmissible.

Circuit Court for Prince George's County
Case No. CT171444X

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1318

September Term, 2020

_____

SEAN URBANSKI

v.

STATE OF MARYLAND

_____

Berger,
Arthur,
Reed,

JJ.

_____

Opinion by Reed, J.
Concurring Opinion by Arthur, J.

_____

Filed: December 7, 2022

Pursuant to the Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

Sean Urbanski ("Appellant") stabbed and killed Second Lieutenant Richard Collins, III ("Lt. Collins") at a bus stop on the University of Maryland ("UM") campus on May 20, 2017. Appellant was charged with first- or second-degree murder ("Count One") and a hate crime under Maryland Criminal Law § 10-304 ("Count Two"). During trial, the State of Maryland ("State") introduced evidence of racially offensive memes[1] stored on the Appellant's cell phone and Appellant's membership in a white supremacist Facebook group named "Alt-Reich Nation"[2] (hereinafter, "contested evidence"). During trial, Nicholas Clampitt ("Clampitt"), a friend, former high school classmate, co-worker of the Appellant who is also a member of the Facebook group stated that the group was based on the "Third Reich" of Nazi Germany.[3] Clampitt testified that the racist memes that were

---

[1] This Court was not able to locate if the term "meme" has been defined in a Maryland case. However, other Courts have defined a meme: "As the term is generally used in our current information age culture, a 'meme' is typically an image or video, that enough people find amusing or interesting, that it is spread widely through sites on the internet." *Fields v. Commonwealth*, 73 Va. App. 652, 662 n.4 (2021). The United States Tenth Circuit has defined a meme as "pictures with text over them or pictures of text." *United States v. Alfred* 982 F.3d 1373, 1276 (2020).

[2] A crime analyst for the University of Maryland Police Department testified that the "Alt-Reich Nation" Facebook group page had been taken down approximately forty-four hours after it was discovered on Appellant's phone.

[3] Although the existence of the Alt-Reich, a white supremacist organization, was deemed "common-knowledge" by the circuit court, the Alt-Reich, as a group, has yet to be defined by the Maryland Court. "*Altreich*", in its origins, is a German word for "Old Realm" and generally refers to Nazi Germany under Adolf Hitler. *See generally* PETER WITTE, TWO DECISIONS CONCERNING THE FINAL SOLUTION TO THE JEWISH QUESTION: DEPORTATIONS TO LODZ AND MASS MURDER IN CHELMNO, 9 Holocaust & Genocide Stud. 318 (1995); *cf. Reich*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/Reich (last visited: Nov. 9, 2022); *Timeline of the Holocaust: 1933-1945*, MUSEUM OF TOLERANCE, https://www.museumoftolerance.com/assets/documents/timeline-of-the-holocaust.pdf (last visited: Nov. 9, 2022). Adolf Hitler and Nazi supporters in Germany

1

admitted into evidence were consistent with materials that were posted on the Alt-Reich Nation Facebook group.

On December 17, 2019, Appellant was acquitted by the Circuit Court of Prince George's County of Count Two charging the hate crime because, as the hate crime statute was written, the crime must have been "because of"[4] the victim's race and the court stated the State had not met this high evidentiary burden. However, the court believed that the admitted evidence was relevant to Appellant's motive in Count One charging Murder. The

_____

killed six million Jews, along with five million other victims, during the Holocaust because they believed that Germans were "racially superior" to Jewish people and that Jewish people were an alien threat to the German racial community. *The Holocaust*, National WWII Museum, *The Holocaust*, National WWII Museum, https://www.nationalww2muse um.org/war/articles/holocaust (last visited: Nov. 9, 2022); *accord Frequently Asked Questions about the Holocaust: What was the Holocaust?*, United States Holocaust Memorial Museum, https://www.ushmm.org/teach/fundamentals/holocaust-questions (last visited: Nov. 9, 2022). The Alt-Reich (also commonly referred to as "Alt-Right") is a group of individuals whose membership believes that "'white identity' is under attack by multicultural forces . . . to undermine white people and 'their' civilization. Characterized by heavy use of social media and memes, they eschew establishment conservatism and promote the goal of a white ethnostate." *The Alt-Right On Campus*, SOUTHERN POVERTY LAW CENTER (Aug. 10, 2017), https://www.splcenter.org/20170810/alt-right-campus-what-students-need-know (last visited: Nov. 9, 2022). The "Alt-Reich Nation" Facebook group was reportedly a social media group where members would post disparaging material about Black, Latino, and Jewish people. *What is the 'Alt-Reich: Nation' Facebook Group*, USA Today (May 22, 2017, 12:15pm), https://www.usatoday.com/story/news/nat ion-now/2017/05/22/what-alt-reich-nation-facebook-group-fbi-investigating-possible-hat e-crime-university-maryland/335961001/ (last visited: Nov. 9, 2022).

[4] The statute was later amended by the Maryland General Assembly in 2020 to replace "because of" with "motivated either in whole or in substantial part by" the protected characteristics. Md. Code Ann., Crim. Law § 10-304 (West 2020).

2

following day, the jury was instructed on the remaining first- and second-degree murder charges. On December 19, 2019, a jury found Appellant guilty of first-degree murder and Appellant was sentenced to life imprisonment with the possibility of parole.

In bringing his appeal, Appellant presents two questions for appellate review, rephrased for clarity:[5]

    I.      Did the circuit court err in admitting the racially offensive evidence in violation of the First Amendment?

    II.     Did the circuit court err in denying Appellant's motion for a mistrial?

For the following reasons, we answer both questions in the negative and affirm the circuit court's holdings.

## FACTUAL & PROCEDURAL BACKGROUND

On May 20, 2017, Appellant stabbed and killed Lt. Collins, a Bowie State University student and Reserve Officers' Training Corps candidate, at a bus stop on the UM campus. During the stabbing, Blake Bender ("Bender") and Amanda Lee ("Lee")

---

[5] In his brief, Appellant presented the two following questions:

    I.      Whether the trial court erred in admitting racially offensive material found on Appellant's phone in violation of the First Amendment, the Constitutional guarantee of due process and contrary to the Maryland Rules of Evidence, absent any nexus between the racially offensive material on the phone and the crime.

    II.     Whether the trial court erred in failing to declare a mistrial after granting a judgment of acquittal on Count Two.

(collectively, "eyewitnesses")[6] were at the bus stop with Lt. Collins. Both Bender and Lee testified to witnessing Appellant murdering Lt. Collins.

Prior to the incident, Bender was out with Lt. Collins at the local bars near UM and ended up at a bus stop where Lee was also waiting for the bus but, because of the late hour, proceeded to call a taxi-car rideshare. At some point, Bender recalled hearing angry screaming coming from "in the woods, further up the walk" from the bus stop. Shortly after hearing the screaming, Appellant approached the group at the bus stop and ordered each person to "step left, if you know what's best for you," "step left, step left if you know what's good for you." Lt. Collins said "what?" asking Appellant what he was talking about and Appellant repeated himself. Bender and Lee stepped out of Appellant's way.

Appellant moved forward with the blade of the knife drawn in his hand. Appellant approached Lt. Collins. Bender testified that Lt. Collins was not threatening, nor did he act aggressively in any manner to Appellant. Lt. Collins responded, "no," to Appellant's orders. Appellant stabbed Lt. Collins in the chest.

The first officer on the scene, Michael Thomas ("Ofc. Thomas"), found Lt. Collins lying on his back suffering from a stab wound to the chest and unresponsive to questioning at approximately 3:04 a.m. Ofc. Thomas identified individuals depicted on the surveillance footage, including Appellant, Lt. Collins, and the two eyewitnesses. Ofc. Thomas noticed

---

[6] Since race is considered as a factor to this case, it is notable that at the time of the incident, Bender presented outwardly as a white male and Lee presented outwardly as an Asian woman.

Appellant sitting at the bus stop while Lt. Collins was loaded into an ambulance. Appellant was arrested at the bus stop where the stabbing occurred.

Appellant was taken into custody. Appellant agreed to a blood test for alcohol and drugs. Appellant surrendered his cell phone and consented to its search. The folding knife that was used to stab Lt. Collins was found in Appellant's pocket after being taken into custody.

At trial, the eyewitnesses to the stabbing testified and identified the Appellant as the perpetrator. Next, a stipulation was read into the record that a deoxyribonucleic acid (DNA) analysis and comparison showed that the DNA from the blade of the knife found in the Appellant's pocket matched Lt. Collins's DNA. The medical examiner testified that the stab wound was approximately three-and-a-half inches deep and the location indicated that the knife cut through Lt. Collins's pulmonary artery and caused severe internal bleeding.

During the trial, the State argued that Appellant stabbed Lt. Collins as a result of his bigoted views. In support of that theory regarding Appellant's motive, the State introduced, *inter alia,* memes into evidence that the Appellant saved on his cell phone and evidence of Appellant's membership to a racist Facebook group title "Alt-Reich Nation," based on Adolf Hitler's Third Reich. The circuit court admitted thirteen racially offensive memes from the Appellant's cellphone into evidence. The memes used racially offensive language with accompanying pictures, such as: 1) a trading card that was altered to say, "Hines Heist: The card allows the player to nab 200 life points from the other player when the n…a ain't looking," 2) a black and white photograph of children playing under a sign that says "Hit

the N…r Baby" with an accompanying caption reading, "Remember back when games used to have a great plot," 3) a picture of television personality and scientist, Bill Nye stating, "Consider the Following" with pictures of a noose, a handgun, and poison, and 4) a picture uses the literary character, Harry Potter's, logo and says, "Harry Potter and the Final Solution: You're a Grand Wizard, Harry."[7]

Michael Waski ("Waski"), a Federal Bureau of Investigation (FBI) computer forensic examiner's expert, testified that 4,000 out of 17,000 pictures on the Appellant's phone were stored in the digital camera image folder (DCIM). Waski stated images stored in the DCIM must be manually saved in the DCIM folder and cannot be saved in the folder by mistake. Waski explained that the user must "interact with the image somehow," either by "taking pictures with your camera or saving them from a text message, or e-mail, or web browser." The memes were all saved within five months of the murder.

Another crime analyst testified that a screenshot of the Appellant's Facebook page from the date of the stabbing listed him as a member of the group "Alt-Reich Nation." As previously mentioned, Clampitt, testified that the group was based on the "Third Reich" of Nazi Germany. Clampitt also testified that he was a member of the "Alt-Reich Nation"

---

[7] This meme alludes to both the Nazi's Final Solution, a euphemism used by Nazi Germany's leaders of mass murdering Europe's Jews, and the Ku Klux Klan's Grand Wizard, a head leader of the Ku Klux Klan. *"Final Solution": Overview*, UNITED STATES HOLOCAUST MEMORIAL MUSEUM, https://encyclopedia.ushmm.org/content/en/article/final-solution-overview (last visited: Nov. 9, 2022); *cf. Grand Wizard*, GOOGLE ARTS AND CULTURE, https://artsandculture.google.com/entity/grand-wizard/m05hzpm?hl=en (last visited: Nov. 9, 2022).

Facebook group and that the memes submitted in evidence are consistent with the material posted on the Facebook group's member page. A crime analyst for the UM Police Department testified that the "Alt-Reich Nation" Facebook group had been taken down approximately forty-four hours after it was discovered on Appellant's phone. At the end of the State's case, Appellant made a motion for judgment of acquittal and the circuit court denied the motion for both Count One and Count Two. The court stated,

> [I]n this case there is evidence that the defendant had on his phone manually, took manual action to save these memes. I think it would be fair to call these memes racist. The memes in question are of (sic) particularly addressed to [B]lack people. Clearly the defendant is white. We have the death of Lieutenant Collins. The question is are these two related.
>
> At this juncture the State has rested and the court takes the evidence in the light most favorable to the State. So with that regard I will deny the defense motion with regard to the hate crime. I will also deny it with regard to the murder.
>
> However, the circuit court later granted the Appellant's motion for a judgment of

acquittal for Count Two, citing the construction of the statute as written. Maryland's hate crime statute under § 10-304 at the time of Appellant's trial stated:

> *Because of* another's race, color. . .., a person may not:
>
> (1)(i) commit a crime or attempt to commit a crime against that person. . . . or
>
> (2) commit a violation of item (1) of this section that:
>
> (i) except as provided in item (ii) of this item, involves a separate crime that is a felony; or
> (ii) results in the death of the victim.

Md. Code Ann., Criminal Law, § 10-304 (West 2019) (emphasis added).

7

In granting the motion in this case the court stated the following:

I analyze the evidence in the case and I find out whether the State has met their burden, and whether a trier of fact, the jury in the case, could find the defendant guilty in these cases.

With regard to the murder cases, it is very clear that certainly the State has met their burden.

The focus on the court would be with the hate crime charges. [sic] Now, I also think it is important to read the statute. 10-304 says *because of* another person's race, it is race in this case, because of another person's race a person may not commit or attempt to commit a crime against that person. It says because of that person, meaning because of that person's race, meaning that was the sole cause of what happened.

In this case we have some evidence of the defendant's ideology or belief as it pertains to [B]lack people. No need to go over that again. He is a member of that group. In fact he didn't just look over this group, he actually thought enough, for whatever reason, to save it, actually save it to his phone. Taking an action in his phone to save it in his phone.

In this case he is — at least in this case he is outside of another bar. His friend, Mr. Akshay, sees him punching a sign or something. Then he walks him up to the bus stop. He leaves him.

The State's witnesses hear loud yelling of some nature. Essentially this defendant comes up to them, the three of them, and at some point posed the question "step left, step left." The other two don't respond. I guess they respond by their body because they step away. Lieutenant Collins does not, he said "what," or "no," and then the defendant strikes him in the chest with the knife. The issue is did he strike him in the chest because he was [B]lack, or I should say did he strike him in the chest *only because* he was [B]lack? So he could have had — him being [B]lack could have made him I'll say from his perspective more likely that he would inflict harm upon him in that the memes would indicate that he viewed [B]lack people as something less than I will say white people in this case, but the State has to link up on that day, at that time that question that a racist, a homophobe, antisemitic could commit a crime against that other particular group without it being hate based in this case.

8

In this case the court doesn't believe that the State has met their burden with regard to the hate crime charge and, therefore, I will grant the defense motion for a judgment of acquittal for that charge only.

Appellant moved for a mistrial based on the court's ruling for Count Two. Appellant argued that the race evidence in the case would have been inadmissible had Count Two not been charged, and since Count Two no longer remained the evidence was inadmissible and was prejudicial. However, the circuit court declined stating,

The court made its ruling yesterday based on the statute, as I indicated. I believe I indicated that I believe race still could've been a factor in it based upon those memes, both the Alt-[R]eich website, that it could've been a factor [in] the actions he took. So I believe that it's still relevant to a murder charge as far as a possible motive.

I guess I want to be clear, if I wasn't yesterday, that I was not saying that his memes or the [Alt-Reich] Facebook[ group] [did not] at all play[ ] a role in what happened on May 20, 2017 and in light of the specific intent of the statute. I do believe it's probative.

I do believe it's fair for the State to argue that those views affected the actions he took that day and I don't believe the prejudice outweighs the probative value in this case and as well as to I don't believe it fits within the other crimes. I mean, again, it goes to intent in this matter.

On December 18, 2019, the jury was instructed on the remaining charges of first- and second-degree murder. The court explained to the jury that voluntary intoxication is a defense to specific intent murder, but not a defense to second-degree depraved heart murder. On December 19, 2019, the jury found Appellant guilty of first-degree murder. On January 14, 2021, Appellant was sentenced to life imprisonment with the possibility of parole. Additional facts will be discussed below as relevant.

## I. ADMISSIBILITY OF CONTESTED EVIDENCE

9

## A. Standard of Review

Appellant erroneously stated in his brief and during oral argument that the proper standard of review is *de novo*, citing *Ayers v. State*, 335 Md. 602 (1994). We disagree. In *Ayers*, the defendant challenged the constitutionality of a portion of Maryland's hate crime statute as it stood at the time of the case, which would require a *de novo* standard of review. *Id.* at 626. In the case before us, Appellant instead challenges the admissibility of the contested evidence at trial.

Our review of the circuit court's decision to admit evidence involves a two-step analysis. First, without deference to a trial court's conclusion, an appellate court reviews whether the evidence is legally relevant. *Ford v. State*, 462 Md. 3, 46 (2018). Pursuant to Maryland Rule 5-402, "[e]xcept as otherwise provided by constitutions, statutes, or the [Maryland R]ules, or by decisional law not inconsistent with the [Maryland R]ules, all relevant evidence is admissible. Evidence that is not relevant is not admissible." *See Sifrit v. State*, 383 Md. 116, 129 (2004); *Dorsey v. State*, 276 Md. 638, 643 (1976). Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. MD Rule 5-403.

Once the evidence is deemed relevant, the circuit court's decision to admit or exclude evidence is reviewed by this Court under an abuse of discretion standard. *Merzbacher v. State*, 346 Md. 391, 404 (1997) (citing Md. Rule § 5-402); *Taneja v. State*, 231 Md. App. 1, 11 (2016), *cert denied*, 452 Md. 549 (2017). "Abuse of discretion [exists] where no reasonable person would take the view adopted by the [circuit] court, or when

the court acts without reference to [ ] guiding rules or principles." *State v. Robertson*, 463 Md. 342, 364 (2019) (quoting *Alexis v. State*, 437 Md. 457, 478 (2014)). "If the trial court's ruling is reasonable . . . we will not disturb the ruling on appeal." *Taneja,* 231 Md. App. at 12 (citing *Peterson v. State*, 196 Md. App. 563, 585 (2010)).

## B. Parties' Contentions

### i. Appellant's Contentions

Appellant contends that the racially offensive memes and evidence of Appellant's membership to the "Alt-Reich" Facebook group presented in trial should have been excluded from consideration by the jury after Count Two regarding the hate crime was dismissed. Citing the Court of Appeals' decision in *Ayers*, Appellant argues that only if the State can prove a "tight nexus" to the murder, should the evidence in question be admissible. Next, Appellant asserts the contested evidence is speech protected by the First Amendment.

Appellant argues that the circuit court failed to conduct a proper analysis and erred in its determination the contested evidence was admissible under Maryland Rules of Evidence 5-403 and 5-404(b) because the jury was empaneled after voir dire questioning concentrating heavily on the impact of racial motivation and impartiality. Finally, Appellant argues that because he was intoxicated and could not have formed the specific intent necessary to be sentenced to first-degree murder.

### ii. State's Contentions

The State contends the contested evidence was relevant and did not violate the First

Amendment. The State asserts that the evidence was not "other crimes" evidence because it was intrinsic to the charged crimes. Alternatively, if it was "other crimes" evidence, the State argues it was admissible for purposes other than showing criminal propensity.

The State cites the Supreme Court case, *Wisconsin v. Mitchell*, 508 U.S. 476 (1993), explaining

> [i]n *Mitchell*, the defendant's sentence for aggravated battery was enhanced under a penalty enhancement provision because he "intentionally selected his victim on account of the victim's race." Mitchell argued the statute violated the First Amendment because it not only punished criminal conduct, but enhanced the punishment for a crime because of his bigoted beliefs. The Supreme Court observed that a defendant's motive for committing an offense has long been relevant to determining an appropriate sentence. In addition, the Court had long upheld federal and state antidiscrimination laws, which look to actions taken "because of" (i.e., motivated by) factors such as "race, color, religion, sex, or national origin."

*See Mitchell*, 508 U.S. at 479-487. The State's argues that in light of *Mitchell* and following Supreme Court cases that upheld the constitutionality of various hate crime statutes from around the country, *see, e.g., People v. Rokicki*, 718 N.E. 2d 333, 335, 339 (Ill. App. 1999) (upholding conviction of man who directed gay epithets at a restaurant server while committing disorderly conduct); *State v. Wyant*, 624 N.E.2d 722 (Ohio 1994) (reversing earlier decision in light of *Mitchell* and upholding constitutionality of ethnic intimidation statute),[8]

---

[8] The State also noted,

> The fact that *Mitchell* involved a penalty-enhancement statute and many states, including Maryland, have created separate hate crime offenses has not altered the analysis used by other state courts. Under *Mitchell*'s reasoning, a

12

the First Amendment offers protection for the expression of offensive views, [but] it does not shield [Appellant] from the legislatively proscribed consequences of engaging in criminal conduct based on animus toward statutorily enumerated cases of protected persons. The Court of Appeals in *Ayers v. State*, 335 Md. 602, 627 (1994), acknowledged that this legislative response to crimes motivated by specific bias complies with Supreme Court doctrine.

The State concludes that the First Amendment does not protect violence, citing *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 916 (1982), and the contested evidence provides relevant context of the Appellant's speech to establish the existence of motive in murdering Lt. Collins.

### C. Analysis

First, this Court must weigh whether the evidence at issue is relevant. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MD Rule 5-401. "Evidence which is thus not

---

penalty enhancement statute is not analytically different from a separate hate crime offense. *See State v. McKnight*, 511 N.W.2d 389, 395-96 (Iowa 1994), cert denied, 511 U.S. 1113 (1994). In *McKnight*, the Supreme Court of Iowa upheld its hate crime law under *Mitchell*, observing that a defendant lost First Amendment protection "when his racial bias toward [B]lacks drove him to couple [his] words with assaultive conduct towards [the victim], who is [B]lack." *Id.* at 395. The Court rejected the notion that the state's law was distinguishable from Mitchell because it defined a new offense rather than adding a penalty enhancement to an existing offense, noting that neither a separate statute nor a penalty enhancement statute "proscribes speech or thought alone[.]" *Id.* at 395-96.

probative of the proposition at which it is directed is deemed irrelevant." *Sifrit*, 383 Md. at

129 (quoting *Dorsey,* 276 Md. at 643).

In the case before this Court, the contested evidence is highly probative of Count

One because it showed possible motive and intent and Count Two because it goes to the

crux of the alleged hate crime. Appellant was charged for a hate crime under Maryland

Code, Criminal Law ("CL") § 10-304(1)(i) (West 2019), which stated,

> *Because of* another person's or group's race, color, religious beliefs, sexual
> orientation, gender, disability, or national origin, or because another person
> or group is homeless, a person may not:
>
> (1)(i) commit a crime or attempt to commit a crime against that person or
> group . . .

*Id.* (emphasis added).[9] The crime required proof that the act was committed *because of*

someone's race. *Lipp v. State*, 246 Md. App. 105, 121 (2020). In this case, the State used

the contested evidence to argue Appellant murdered Lt. Collins based on his race.

This Court finds that the facts are clear: Appellant was a member of a group that

had bigoted beliefs against *inter alia*, Black people. The other two eyewitnesses were of

white and Asian descent. He ordered each person to "step left." Lt. Collins, a Black man,

was stabbed by a person that had bigoted beliefs against Black people. Those bigoted

beliefs aligned with and were encouraged by the membership to the "Alt-Reich" Facebook

---

[9] In 2020, named Lt. Collins's Law, the statute was changed by the Maryland General
Assembly to state "*Motivated either in whole or in substantial part* by another person's or
group's race . . . a person may not commit a crime or attempt or threaten to commit a crime
against that person." Md. Code Ann., Crim. Law § 10-304(1)(i) (West 2020) (emphasis
added).

group, as testified to by Clampitt — a friend, former high school classmate, and co-worker of Appellant who is also a member of the group. Clampitt also stated that the group was based on the "Third Reich" of Nazi Germany. The memes that were admitted into evidence were testified as consistent with materials that were posted on the Alt-Reich Nation Facebook group page.

Appellant argues that since Count Two was dismissed, the evidence presented was prejudicial to his case. Under Maryland Rule 5-403, the circuit court is entrusted with the discretion to exclude evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." However, even if evidence is prejudicial, "that does not mean that it was 'unfairly' prejudicial such that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. *Ford*, 462 Md. at 58. In balancing probative value against prejudice, the Court of Appeals explains

> "the fact that evidence prejudices one party or the other, in the sense that it hurts his or her case, is not the undesirable prejudice referred to in [Maryland] Rule 5-403." Rather, "[e]vidence may be unfairly prejudicial if it might influence the jury to disregard the evidence or lack of evidence regarding the particular crime with which he [or she] is being charged."

*Id.* at 58-59 (quoting *Odum*, 412 Md. at 615 (cleaned up)). "The responsibility for conducting this balancing is entrusted in the first instance to the trial court." *Johnson*, 332 Md. 456, 473 (1993).

15

Summarily, the nature of the evidence must be such that it generates such a strong emotional response from the jury such that the inflammatory nature of the evidence makes it unlikely for the jury to make a rational evaluation of the evidentiary weight. The inflammatory nature of the evidence must be such that the "shock value" on a layperson serving as a juror would prevent the proper evaluation or weight in context of the other evidence. However, the contested evidence presented in this case did not contain content that would inherently prevent jurors from rationally considering and weighing the contested evidence with all other evidence presented during trial, such as, *inter alia*, the surveillance footage, the murder weapon found on the Appellant's person with the victim's blood, and the testimony of the eyewitnesses. Thus, this Court finds no abuse of discretion in the circuit court's decision to admit the contested evidence.

Notably, Appellant relies heavily on *Ayers v. State*, 335 Md. 602 (1994). In *Ayers*, the defendant challenged the constitutionality of the hate crimes statute which

> make it a crime to "harass or commit a crime upon a person . . . because of that person's race, color, religious belief or national origin." Ayers argued that a state cannot constitutionally enact a content-based law which prohibits free speech. He maintained that content-based regulations are presumptively invalid and that bias-motivated speech, no matter how reprehensible, "does not justify selectively silencing speech on the basis of content."

*Id.* at 609. Ultimately, the constitutionality of the statute was upheld. Unlike in *Ayers*, the constitutionality of the statute is not in question in the case at bar.

In his brief, Appellant states that in *Ayers*, "the Court of Appeals made clear that the hate crime statute survives an as-applied challenge under the First Amendment *only* when

16

there is a *tight nexus* between the otherwise protected speech and the crime." We disagree

with Appellant's interpretation of the *Ayers* case. Appellant's proposed standard under

*Ayers* reaches further from the actual standard set forth in the case and this Court declines

to expand the reach of *Ayers*. The *Ayers* Court held:

> *only speech actually connected with the offense should be used as evidence of motivation.* Because there was such a "tight nexus" between [previous] incidents, we hold that admitting the evidence regarding the 7-Eleven incident did not violate the First Amendment, nor did it violate the rule which generally prohibits the introduction of other crimes evidence.

*Ayers*, 335 Md. at 637 (emphasis added). By the plain language of the holding in *Ayers*,

the issues implicated were possible violations of the First Amendment and, separately, the

evidence rule that generally prohibits the introduction of other crimes evidence. To be sure,

the Court stated that there was a "tight nexus" between the incidents but did not create a

standard requiring a tight nexus between the speech and the hate crime to be used as

evidence of motivation for the hate crime.

First, regarding the issue of speech and the hate crime as charged, this Court has

previously stated that the *Ayers* Court held "that circumstantial proof of racial motivation

was of 'vital importance' to *proving the defendant committed a hate crime.*" *Sewell v. State,*

239 Md. App. 571, 612 (2018) (emphasis added). Inherently, racially motivated evidence

must be connected in some way to the hate crime charged as stated in *Ayers.* Indeed, the

*Ayers* Court quoted the ACLU of Maryland and ACLU of National Capital Area's Brief of

Amicus Curiae stating that:

17

> "At a minimum, any speech or association that is not contemporaneous with the crime must be part of the chain of events that led to the crime. Generalized evidence concerning the defendant's racial views is not sufficient to meet this test."

*Ayers*, 335 Md. at 636 (quoting *Brief of Amicus Curiae ACLU of Maryland and ACLU of National Capital Area* at 13 n. 9). However, this Court does not read the holding of the *Ayers* case to require a "tight nexus" between the incidents (as Appellant repeatedly iterates), but rather that the racially motivated speech, when weighed in context and for motivation of a charged hate-crime under Md. Code Ann., CL § 10-304, has to be connected in some way with the hate crime offense to be used as evidence of motivation of the hate crime. *See Sewell v. State,* 239 Md. App. 571, 612 (2018). This Court reads this standard to only apply to the theory of motivation of charged hate crimes and not the charged first-degree murder charge.

Appellant was acquitted of the hate crime because the circuit court could not find that the Appellant murdered Lt. Collins solely "*because of*" his race. Despite holding that the State had not passed the high evidentiary bar set to convict Appellant of a hate crime, the circuit court still found the contested evidence relevant to motivation for first-degree murder. This Court holds that the circuit court did not err in doing so and is not inconsistent with *Ayers.* The *Ayers* Court reiterated the Supreme Court's standard set forth in *Mitchell.*

> The prospect of a citizen suppressing his bigoted beliefs for fear that evidence of those beliefs will be introduced against him at trial if he commits a serious offense against person or property . . . is simply too speculative a hypothesis . . .
> The First Amendment, moreover, does not prohibit the evidentiary use of speech to establish elements of a crime or to prove motive or intent. Evidence

of a defendant's previous declarations or statements is commonly admitted in criminal trials subject to evidentiary rules dealing with relevancy, reliability, and the like.

*Mitchell*, 508 U.S. at 489. This Court in *Lipp*, further explained *Mitchell*, stating that bias-motivated speech, coupled with non-verbal, proscribed conduct, is not protected by the First Amendment. *Lipp*, 246 Md. App. at 121.

Notably, the memes were not just racially offensive. In addition to being racist, the memes encouraged and promoted violence against Black people by "nab[bing] . . . life points . . . when the n…a ain't looking[,]" "Hit[ting] the N…r Baby[,]" and images stating to "consider" nooses, which has a historical significance in the killing of Black people in American history. Because Appellant was charged with first-degree murder, the State had to prove that the killing had been a willful, deliberate, and premeditated intent to kill the victim, and that he committed some overt act towards that end. *Martin v. State*, 218 Md. App. 1, 40-41 (2014) (citations omitted). "An intent to kill often must be proved by circumstantial evidence and found by inference. Absent an admission by the accused, it rarely can be proved directly." *Burch v. State*, 346 Md. 253, 273 (1997) (citing *State v. Earp,* 319 Md. 156, 167 (1990)). Memes depicting violence against Black people constituted relevant evidence that was probative of Appellant's intent to violently harm Lt. Collins. Thus, this Court holds that the contested evidence was admissible to prove motive for first-degree murder and does not violate the Appellant's First Amendment rights.

### i. Evidence of "Other Crimes"

In *Ayers*, the defendant maintained that evidence of a prior criminal altercation was

improperly admitted because it constituted evidence of "other crimes." *Id.* at 629-30. This Court does not perceive being part of a white supremacist group or having racist memes on your cell phone as a per se crime. However, this Court must weigh, under Maryland Rule 5-404(b), whether the evidence is admissible under the "other crimes" legal framework for its admissibility as motive or intent evidence. Under Maryland Rule 5-404(b):

> Evidence of other crimes, wrongs, or other acts . . . is not admissible to prove the character of a person in order to show action in the conformity therewith. Such evidence, however, may be admissible for other purposes, such as proof of *motive,* opportunity, *intent,* preparation, common scheme or plan, knowledge, identity, absence of mistake or accident, or in conformity with Rule 5-413.

*Id.* (emphasis added); *see also Nelson v. State*, 5 Md. App. 109, 121 (1968) (generally citing *Dobbs v. State*, 148 Md. 34 (1925)) (emphasis added). In addition to the rules of evidence regarding relevancy and prejudice, as previously addressed, to be admissible evidence of motive or intent, the evidence must have some special relevance to the contested issue and the defendant must have been found to actually have committed the crimes. *Cf. Odum v. State*, 412 Md. 593, 610 (2010); *Streater v. State*, 352 Md. 800, 806 (1999).

The contested evidence was relevant to prove Appellant's motive or intent to harm Lt. Collins. Motive or intent evidence can show special relevance to the case and can be proven by prior conduct. *Cf. Odum*, 412 Md. at 610; *Johnson v. State*, 332 Md. 456, 470 (1993). Such evidence is admissible, even if not directly concurrent, when the subject acts

20

are obviously connected to the charge. *Id.* As previously stated, Appellant was charged with first-degree murder and the State had to prove the willful, deliberate, and premeditated nature of Appellant's actions. The memes depicted violence against Black people like Lt. Collins. It was uncontested that the memes were saved to the Appellant's phone and Appellant joined the white supremacist Facebook group in the months leading up to Lt. Collins' murder. Thus, although the State could not prove the act was solely *because of*[10] Lt. Collins's race and Count Two was ultimately dismissed by the circuit court, this Court holds that the contested evidence to show motive or intent to harm Lt. Collins was highly probative and has special relevance to Count One charging murder.

### ii. Harmless Error

Though, arguendo, if the evidence was not properly admitted, on review, we would apply the longstanding principle that improperly admitted evidence must be prejudicial to warrant reversible error. *See* Maryland Rule 5-103(a) (stating generally that "[e]rror may not be predicated upon a ruling that admits or excludes evidence unless the party is prejudiced by the ruling"). "[P]rejudice is not presumed 'when the jury considers evidence admitted by the trial court which is later determined to have been erroneously admitted.'" *Merritt v. State*, 367 Md. 17, 33 (2001) (citing *State Deposit v. Billman*, 321 Md. 3, 16 (1990)). Rather, it is well settled in Maryland that we will review prejudice through the

---

[10] Notably, *supra* fn. 4, 9, in 2020, the General Assembly changed the statute to replace "because of" with "motivated either in whole or in substantial part by" the protected characteristics. Md. Code Ann., Crim. Law § 10-304 (West 2020).

lens of harmless error:

> when an appellant, in a criminal case, establishes error, unless a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict, such error cannot be deemed 'harmless' and a reversal is mandated.

*Dorsey v. State*, 276 Md. 638, 659 (1976). Furthermore,

> In a criminal jury trial, the jury is the trier of fact. For this reason, it is responsible for weighing the evidence and rendering the final verdict. Therefore, any factor that relates to the jury's perspective of the case necessarily is a significant factor in the harmless error analysis. Thus, harmless error factors must be considered with a focus on the effect of erroneously admitted, or excluded, evidence on the jury.

*Dionas v. State*, 436 Md. 97, 109 (2013) (emphasis added); *Beckwitt v. State*, 249 Md. App. 333, 400–01, *cert. granted*, 474 Md. 720 (2021), and *aff'd*, 477 Md. 398 (2022), *reconsideration denied* (Mar. 25, 2022).

Appellant was charged with first degree murder and acquitted of Count Two. Appellant contends that:

> When the Appellant was acquitted of the hate crime, a mistrial was required as the entire trial had been about the memes. There was a likely possibility that the jury would convict Appellant of the murder because they had been told [Appellant] was a racist – a bad person.

However, there was an overwhelming amount of non-racially charged evidence before the jury that Appellant intended to kill or seriously injure Lt. Collins, such as: 1) the two eyewitnesses at the scene that: a) witnessed the Appellant approach the group, wield his knife, and stab Lt. Collins and b) identified the Appellant as the perpetrator of Lt. Collins' murder; 2) the knife with Lt. Collins's blood on the weapon found on the Appellant's

person when he was arrested; 3) the surveillance evidence of the Appellant stabbing Lt. Collins; and 4) the nature of the assault and location of the stab wound in the chest cavity. *See generally Wood v. State*, 209 Md. App. 246, 325 (2012). Thus, this Court does not find the Appellant's argument about the "likely possibility that the jury would convict Appellant of the murder" because of the contested evidence convincing. Most certainly, this Court does not find the contested evidence prejudicial enough to warrant reversible error.

## II.    MOTION FOR MISTRIAL

Appellant argues that the circuit court erred in refusing to declare a mistrial after granting the renewed motion for judgment of acquittal for Count Two. Appellant presented evidence during trial that Appellant may have been intoxicated when he stabbed Lt. Collins. The circuit court explained to the jury that voluntary intoxication is a defense to specific intent murder, but not a defense to second-degree depraved heart murder. On December 19, 2019, the jury found Appellant guilty of first-degree murder. Appellant suggests that absent the contested evidence, the "jury would have been left a genuine debate of whether Appellant's intoxication left him unable to act willfully or deliberately."

The State, in response, contends that Appellant is wrong because the circuit court declared that the judgment of acquittal "was not a repudiation of its evidentiary ruling (and that evidence was still relevant to the jury's consideration of the murder charge), but rather on the specific statutory language of the hate crime statute . . . " Moreover, the State cites this Court's previous holding in *McIntyre v. State*, 168 Md. App. 504, 524 (2006) explaining that a "mistrial is an extreme sanction" that is necessary only "when such

overwhelming prejudice has occurred that no other remedy will suffice to cure the prejudice."

We agree with the State. In *Barrios v. State*, 118 Md. App. 384, 396-97 (1997) (internal citations and quotations omitted), this Court stated:

> [T]he declaration of a mistrial is an extraordinary act which should only be granted if necessary to serve the ends of justice. The granting of a motion for a mistrial is committed to the sound discretion of the trial court. We will not reverse a trial court's denial of a motion for mistrial unless the defendant was so clearly prejudiced that the denial constituted an abuse of discretion. The reviewing court should not determine whether less stringent security measures were available to the trial court, but rather whether the measures applied were reasonable and whether they posed an unacceptable risk of prejudice to the defendant.

For the reasons previously stated, this Court holds that the Appellant was not so clearly prejudiced by the circuit court's decision to deny the motion for a mistrial, thus the circuit court did not abuse its discretion in doing so. Thus, this Court declines to reverse the circuit court's denial of a motion for a mistrial.

Accordingly, we affirm the circuit court judgment.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

24

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1318

September Term, 2020
_____

SEAN URBANSKI

v.

STATE OF MARYLAND
_____

Berger,
Arthur,
Reed,

JJ.
_____

Concurring Opinion of Arthur J.
_____

Filed:  December 7, 2022

I respectfully concur in the judgment. I write separately to explain my reasoning.

There is no question that Sean Urbanski murdered Lt. Richard Collins: two eyewitnesses testified that Urbanski stabbed Lt. Collins, the police found the bloody knife in Urbanski's pocket, and the crime was captured on surveillance video. By the time this case went to the jury, the only question was whether Urbanski was guilty of first-degree premeditated murder or of second-degree murder. Urbanski introduced a considerable amount of evidence tending to show that he was so drunk at the time of the incident that he could not have formed the requisite state of mind for first-degree murder.[1]

Yet, as the State acknowledges, "[t]he main issue at trial" was not premeditation, but the admissibility of the racist memes on Urbanski's phone and Urbanski's membership in the Alt-Reich Facebook group. The circuit court admitted that evidence on the premise that it was relevant to whether Urbanski had committed a hate crime – i.e., to whether Urbanski had murdered Lt. Collins "[b]ecause of" his race, within the meaning of § 10-304 of the Criminal Law Article. At the close of all the evidence,

---

[1] For example, Urbanski's friend, Akshay Lingayat, testified that as he was leaving a bar at 2:00 a.m., about an hour before the murder, he saw Urbanski, who was punching a lightpost and seemed to be extremely intoxicated and unable to express anything other than random thoughts. The eyewitnesses heard angry, nonsensical screaming from the woods just before Urbanski emerged from them. A toxicologist testified that, based on a blood sample taken hours after the arrest, Urbanski's blood-alcohol concentration at the time of the murder was between .17 and .24 grams of alcohol per milliliter of blood, or between two and three times the legal limit for driving. After stabbing Lt. Collins to death, Urbanski did not leave the scene; instead, he sat down at the nearby bus stop, where the eyewitnesses pointed him out to the police. And video footage from the police station shows Urbanski singing to himself and urinating into a drain in his cell at some point shortly after 4:00 a.m.

however, the court correctly granted a motion for judgment of acquittal on the hate-crimes charge. *See generally Ayers v. State*, 335 Md. 602, 637 (1994).[2]

Having acquitted Urbanski of the hate-crimes charge, the court was confronted, after more than a week of trial, with a problem concerning the considerable amount of evidence that it had admitted concerning Urbanski's racist beliefs. Although the court had admitted that (highly inflammatory) evidence in support of the now-defunct hate-crimes charge, it reasoned that the evidence was relevant to Urbanski's "motive" for stabbing Lt. Collins or to Urbanski's "intent." On that basis, the court denied Urbanski's motion for a mistrial.

Had I been called upon to make those same decisions, I would have concluded that the probative value of the racist memes and of Urbanski's membership in a neo-Nazi organization was substantially outweighed by the danger of unfair prejudice, in a case that now involved only a charge of murder. Thus, I would have concluded that that

---

[2] The court granted the motion for judgment of acquittal on the premise that Urbanski could be guilty of a hate crime only if he had acted *solely* "because of" race. I question whether that interpretation was correct. *Cf. Bostock v. Clayton County, Georgia*, ___ U.S. ___, 140 S. Ct. 1731, 1741 (2020) (under Title VII of the Civil Rights Act of 1964, which prohibits discrimination "because of" sex, race, and other enumerated factors, an employer is liable if it intentionally fires an employee "based in part" on a prohibited factor; "[i]t doesn't matter if other factors . . . contributed to the decision"). In this case, the hate-crimes charge was not flawed because of the presence of motivating factors other than race; it was flawed because the State could not show the requisite "tight nexus" between Urbanski's racist views and his criminal conduct. *Ayers v. State*, 335 Md. at 637. In contrast to this case, the *Ayers* Court upheld a hate-crimes conviction against a white defendant who assaulted Black victims, where the defendant had said that he wanted to go "n****r hunting" because of another racially-charged altercation a few days earlier. *Id.* In *Ayers*, unlike this case, the State established a "tight nexus" between the defendant's conduct in the earlier altercation and the subsequent assault.

evidence was inadmissible under Md. Rule 5-403.  I find it incongruous that the State must establish a "tight nexus" between the defendant's racist attitudes and the defendant's criminal conduct in order to prove that a crime was also a hate crime (*Ayers v. State*, 335 Md. at 637), but that the State is relieved of that obligation when it seeks to use the defendant's racial attitudes only to prove that the defendant committed the underlying crime itself.  I am concerned that the jury may have convicted Urbanski of first-degree murder because he is a racist, and not because the State proved the element of premeditation beyond a reasonable doubt.  I find it difficult to believe that the court would have admitted the evidence of Urbanski's racist attitudes had the State not overcharged this case by indicting Urbanski for a hate crime that it was ultimately unable to prove.

Having determined that the memes and the evidence of Urbanski's membership in a neo-Nazi organization were inadmissible in a case that involved only a charge of murder, I would have declared a mistrial.  The mistrial would have enabled the State to retry Urbanski for Lt. Collins's murder and to secure a murder conviction based on the evidence of his criminal conduct, rather than on his inflammatory, racist views.

I concur in the judgment because I recognize that an appellate court must afford an enormous degree of deference to the trial court judge's discretionary determinations about whether the probative value of evidence is substantially outweighed by the danger of undue prejudice (*see*, *e.g*., *Walter v. State*, 239 Md. App. 168, 198-99 (2018)) and about whether to grant a mistrial.  *See*, *e.g*., *Nash v. State*, 439 Md. 53, 67-68 (2014).  Those decisions are not mine; they are entrusted to the trial judge.  This Court can reverse

3

those decisions only if it finds an abuse of discretion, which is said to occur when no reasonable person would take the view adopted by the trial court; when the court acts without reference to guiding rules or principles; or when the ruling appears to have been made on untenable grounds, or is clearly against the logic and effect of the facts and inferences before the court, or constitutes an untenable judicial act that defies reason and works an injustice. *See*, *e.g.*, *North v. North*, 102 Md. App. 1, 13-14 (1994). "[A] ruling reviewed under an abuse of discretion standard will not be reversed simply because the appellate court would not have made the same ruling." *Id*. at 14.

I cannot see an abuse of discretion in this case. I see difficult decisions by a conscientious trial judge. For that reason, I respectfully concur in the judgment.

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/cosa/1318s20cn.pdf